U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2009 MAY 18  PH 12: 10

CLERK

BY _____

DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## VERMONT

| | |
|---|---|
| TIM SAUNDERS,<br><br>      Plaintiff,<br><br>  v.<br><br>SEAN DAVID MORTON, DARYL WEBER,<br>JOSHUA WEBER, MELISSA MORTON, 27<br>INVESTMENTS LLC, MAGIC EIGHT BALL<br>DISTRIBUTING, INC., VAJRA<br>PRODUCTIONS LLC, DELPHI<br>ASSOCIATES INVESTMENT GROUP, AND<br>FRASER VALLEY TRADING,<br><br>      Defendants. | NO.   2:09.cv-125<br><br>VERIFIED COMPLAINT |

## INTRODUCTION

1.      This litigation stems from a fraudulent investment scheme devised and carried out by the Defendants listed above through Sean David Morton, Daryl Weber, Joshua Weber, Melissa Morton, 27 Investments LLC, Magic Eight Ball Distributing, Inc., Vajra Productions LLC, Delphi Associates Investment Group, Fraser Valley Trading and others who have yet to be identified.

2.      Morton holds himself out across the United States as an investment expert to induce individuals to give him their money for investment.

3.      However, once money is received not all of it is used for investing.

1

4.      A substantial portion of the money is misappropriated for a variety of inappropriate uses such as personal uses and enrichment as well as the perpetuation of an illegal Ponzi-scheme.

5.      Plaintiff Tim Saunders was induced to invest $135,000 with Defendants, which he did.

6.      Plaintiff Saunders files this action against Defendants in an effort to recover the $135,000 fraudulently induced and consumed by Defendants and to obtain such other remedies as are available to him under the law.

### PARTIES

7.      Plaintiff Tim Saunders ("Saunders") is a resident of Alaska, 6821A Gold Kings Avenue, Anchorage, AK, 99504.

8.      Defendant Sean David Morton ("Morton") and Melissa Morton (collectively the "Mortons") are husband and wife and are residents of California, with a last known address of 2207 Hermosa Avenue, Hermosa Beach, CA.

9.      Defendant Daryl Weber ("Weber") is a resident of Vermont, with a last known address of 40 Church Street, Burlington, Vermont

10.     Defendant Joshua Weber ("Joshua Weber") is a resident of Vermont, with a last known address of 40 Church Street, Burlington, Vermont.

11.     27 Investments LLC("27 Investments") is a New Mexico registered limited liability company, owned and operated by the Mortons, with a registered address of 3600 Cerrillos, Suite 714C-899, Santa Fe, New Mexico 87507.

2

12.     Magic Eight Ball Distributing, Inc. ("Magic Eight Ball") is a California corporation, owned and operated by the Mortons, with a registered address of 14290 Freshwater Avenue, Burbank, California 91502.

13.     Vajra Productions LLC ("Vajra") is a New Mexico registered limited liability company, owned and operated by the Mortons and Weber, with a registered address of 3600 Cerrillos, Suite 714C-899, Santa Fe, New Mexico 87507. Vajra is one of the companies through which Plaintiff's money was supposedly invested.

14.     Fraser Valley Trading ("Fraser"), upon information and belief, is a securities firm operating in the United States and Canada. Fraser is one of the companies through which Plaintiff's money was supposedly invested.

15.     Upon further information and belief, Weber is an officer, director, agent and/or employee of Fraser.

16.     Upon information and belief, Joshua Weber is an employee and/or agent of Daryl Weber.

17.     Plaintiff's money was transferred to, deposited into or placed under the control of Weber and Joshua Weber.

18.     Upon information and belief, Defendants used Plaintiff's money to perpetrate the acts alleged in this Complaint.

## JURISDICTION AND VENUE

19.     The claims asserted herein arise under §§ 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), and 78t(a), and Rule 10b-5, 17 C.F.R. § 240-10b-5, promulgated thereunder, and under Vermont law for breach of

fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement.

20.　　In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce.

21.　　This Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. §§ 1331 and 1337.

22.　　This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

23.　　This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

24.　　Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391(b).

25.　　Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, as well as securities trading and transactions occurred in substantial part in this District.

26.　　Further, upon information and belief, Defendants conduct business in this District, and certain of the Defendants are citizens of Vermont and reside in this District.

## FACTS RELEVANT TO ALL COUNTS

27.　　Morton holds himself out across the United States as an investment expert.

28.　　Morton promotes his investment expertise through a nationally syndicated radio show and written newsletter, which, upon information and belief, is delivered to individuals throughout the United States.

29.     Sometime in February 2007, Saunders mailed a check to the Mortons for investment with Vajra Productions, LLC.

30.     On March 2, 2007, the check was cashed.

31.     Melissa Morton acknowledges receipt of the check on April 18, 2007 and also acknowledges that the funds were deposited into a "fund" that apparently commingled the funds of other investors with Vajra.

32.     On April 18, 2007, Melissa Morton also represents that she will "Make sure you receive some profits for the past month that the funds have been in the account and trading."

33.     Morton acknowledges that his "partner" is Daryl Weber.

34.     Morton uses a series of LLCs, investments schemes, marketing tools and incentives to induce investors to invest with him.

35.     One such investment scheme is called the "Champagne Room" marketed to investors willing to invest over $100,000 dollars with Defendants.

36.     In addition, Defendants periodically release false statements such as "[We are] on track for twice as much profit" to induce Plaintiff to act or forebear from acting.

37.     When Plaintiff expressed an interest in investing over $100,000 with Defendants on or about June 1, 2007, Defendants issued false statements to induce Plaintiff to invest.

38.     Those false statements involved representations about investments which includes the money of "4 investors, all with over $100K invested (currently two $200K investors and one $100K investor).

39.     Once Defendants induced Plaintiff to act on the "Heaven and Earth" investment, Defendant Melissa Morton diverted his $135,000 into a Vajra account.

40.     Plaintiff believes this diversion was a deliberate, willful, and malicious part of the Ponzi scheme in which Plaintiff's money was consumed by Defendants to pay themselves or earlier investors with the funds of new investors such as Plaintiff.

41.     In addition, upon information and belief, Defendants commingled the funds and misappropriated funds to benefit themselves at the expense of Plaintiff.

42.     Defendants continued to issue false statements to Plaintiff such as "The traders have been making several thousands a day" in order to induce Plaintiff to act or refrain from acting.

43.     To attract Plaintiff and other investors, Morton touted his investment prowess and the false success of his funds through various newsletters and marketing efforts.

44.     Defendants also used email solicitations and direct email contact as inducements.

45.     Morton also regularly claimed successful trading and profits during guest appearances on a well-known radio show entitled "Coast to Coast AM by George Noory" Saunders contacted Morton on August 3, 2006.

46.     Upon information and belief, Defendants deliberately and intentionally duped Plaintiff and others like him, by promising that Plaintiff's funds would be invested into trading accounts that were profitable.

47.     Upon information and belief, these statements were deliberately false and made to induce Saunders to act or forebear from acting once he did invest.

48.     Upon information and belief, the funds were losing money and hiding those losses through deliberately false reporting, false bookkeeping, and fraudulent concealment.

49.     In addition, the money was not used to invest but to pay earlier investors and Defendants themselves.

50.     Morton's business partner, Defendant Daryl Weber, along with Weber's son, Defendant Joshua Weber, operated the fund either out of Vermont or from Vermont through Frazer Valley Trading and other as yet unidentified brokerage firms, with the full knowledge and consent of all Defendants.

51.     Defendants knowingly engaged in this fraud and each profited from it.

52.     When the scheme could no longer support itself, Defendants simply broke off contact with Plaintiff from August 2007 through December 2007.

53.     Only after Plaintiff demanded accounting was Plaintiff informed of the "Closure of Vajra Productions LLC., 27 Investments LLC and Magic Eight Ball Distributing, Inc."

54.     A letter from Peder K. Davisson, Esquire, who represents himself as a member of the firm "Davisson & Associates, PA, 3649 Brunswick Avenue North, Minneapolis, Minnesota 55422 Telephone Number (763) 208-0480" offers an explanation of how the funds were used; however, the telephone number is not the telephone number of Peder Davisson or Davisson & Associates and neither is present at the address listed.

## COUNTS I THROUGH XI

## COUNT I – SECURITIES FRAUD

55.     Plaintiff incorporates paragraphs 1 through 54 of this Complaint and by this reference as though the same were set forth herein verbatim. Defendants were engaged in the sale of securities.

56.     Defendants, by use of instrumentalities of interstate commerce, engaged in a course of conduct designed to steal hundreds of thousands of dollars from unsuspecting investors, and particular to this complaint, from Plaintiff Tim Saunders.

57.     Defendants employed devices, schemes and artifices to defraud Plaintiff and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about the securities not misleading.

58.     Defendants are liable as direct participants in the wrongs complained of in this complaint.

59.     Defendants acted with scienter in that they either had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true material facts, even though they were available to them.

60.     By virtue of the foregoing, Defendants violated the Exchange Act and Rule 10b-5 and are jointly and severally liable to Plaintiff for all resulting damages.

## COUNT II – COMMON LAW FRAUD

61.     Plaintiff incorporates paragraphs 1 through 60 of this Complaint and by this reference as though the same were set forth herein verbatim.

62.     Defendants individually and collectively made, or caused to be made, false statements and misrepresentations, and engaged in deceptive conduct, knowing the statements, representations, and conduct were false and misleading at the time made, in order to dupe Plaintiff into giving money to Defendants for investing.

8

63.     These false statements, representations and conduct, as described above, included omissions of material fact in order to induce Plaintiff to act, or to forebear from acting.

64.     Examples of false and misleading statements, representations, and conduct made by Defendants to induce Plaintiff to act or forebear from acting include statements and representations, and contractual representations, that the Plaintiff's funds would be used to invest in foreign currency trading.

65.     In fact, the funds were diverted from foreign currency trading and deliberately converted to personal uses of Defendants.

66.     Additional false and misleading statements, misrepresentations, and fraudulent conduct include numerous emails misrepresenting the true value and performance of the investments.

67.     By Defendants' collaborative effort to present false and misleading information, Plaintiff was fraudulently induced to deposit more money or forebear from withdrawing money already invested.

68.     If Defendants had truthfully and timely delivered material information to Plaintiff, Plaintiff would not have invested at all, would not have invested on two different occasions, or would have withdrawn his money earlier and thereby suffered a lesser loss.

69.     As a result of Defendants' fraud, Plaintiff invested and lost $135,000.

70.     By relying on Defendants' fraudulent conduct, false statements, and misrepresentations, Plaintiff sustained monetary damages in the amount of $135,000, exclusive of interest and costs.

## COUNT III – CIVIL CONSPIRACY

71.     Plaintiff incorporates paragraphs 1 through 70 of this Complaint and by this reference as though the same were set forth herein verbatim.

72.     Defendants, during all times relevant, represented themselves as either managers, officer, directors, or partners involved in the investment of Plaintiff's funds.

73.     In league with one another to induce Plaintiff to invest, Defendants conspired to deceive and defraud Plaintiff of his investment.

74.     Defendants engaged in conduct designed to induce Plaintiff into a fraudulent investment scheme presented as a successful, albeit unorthodox, foreign currency trading strategy.

75.     While Plaintiff knowingly invested in a fund employing an unorthodox strategy, the conspiracy that bilked Plaintiff of his funds was not the unorthodox trading strategy but conversion, a Ponzi-scheme, and an outright fraud.

76.     Plaintiff was duped into investing in this supposedly wildly successful fund when, in fact, his money was used to repay earlier investors, avert or settle pending lawsuits, cover up losses, pay expenses, or simply satisfy the greed of Defendants.

77.     The conspiracy was a deliberate, calculated, and successful effort to dupe Plaintiff into sending defendants $135,000, believing his money would be used exclusively to trade foreign currencies.

78.     To achieve this fraud on Plaintiff and others, Defendants used the mail, email, interstate wires, promotional materials, radio show promotions, and other forms of marketing.

79.     Because Defendants acted in concert to perpetrate and perpetuate a fraud, and because Defendants profited from that fraud, Defendants are jointly and severally liable to Plaintiff for damages of $135,000 exclusive of interest and costs.

## COUNT IV – FRAUDULENT CONVERSION

80.     Plaintiff incorporates paragraphs 1 through 79 of this Complaint and by this reference as though the same were set forth herein verbatim.

81.     Defendants deliberately converted Plaintiff's funds to their own personal uses.

82.     Plaintiff was led to believe Defendants would and were investing his funds in foreign currency trading based on Morton's psychic abilities.

83.     In reality, Defendants had misappropriated and converted Plaintiff's funds.

84.     In addition, Defendants concealed the conversion for over four months.

85.     As a direct and proximate result of Defendants' fraudulent conversion, Plaintiff has sustained monetary damages in the amount of $135,000 exclusive of interest and costs.

## COUNT V – BREACH OF CONTRACT

86.     Plaintiff incorporates paragraphs 1 through 85 of this Complaint and by this reference as though the same were set forth herein verbatim.

87.     Defendants entered into a verbal contract to invest in foreign currencies.

88.     Pursuant to the terms and conditions of the verbal contract Plaintiff, provided $135,000 at the time and place required.

89.     Defendants breached the contract by failing to invest in foreign currencies, instead, immediately violated the terms, and conditions of the verbal contract by misappropriating and converting Plaintiff's funds to uses other than foreign currency trading.

90.     As a direct and proximate result of Defendants' breach of contract, Plaintiff has sustained monetary damages in the amount of $135,000, exclusive of interest and costs

## COUNT VI – UNJUST ENRICHMENT

91.     Plaintiff incorporates paragraphs 1 through 90 of this Complaint and by this reference as though the same were set forth herein verbatim.

92.     Defendants were bound by express and implied contractual terms and conditions to invest Plaintiff's funds in foreign currency trading.

93.     Defendants breached the terms and conditions of a verbal contract with Plaintiff by defrauding Plaintiff and converting his investment money into personal uses.

94.     Defendants were thereby unjustly enriched.

95.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiff has sustained monetary damages in the amount of $135,000, exclusive of interest and costs.

## COUNT VII – BREACH OF FIDUCIARY DUTY

96.     Plaintiff incorporates paragraphs 1 through 95 of this Complaint, and by this reference as though the same were set forth herein verbatim.

97.     Fiduciary duties and relationships arise between individuals and partners particularly where one party relies upon the other's superior knowledge, experience, and skill.

98.     Plaintiff's deposit of $135,000 with Defendants demonstrated his reliance upon Defendants to invest his money as promised.

99.     Defendants thereby assumed a fiduciary duty to invest the funds as promised.

100.    Plaintiff necessarily reposed a special confidence in Defendants, and Defendants knew Plaintiff depended on their guidance, knowledge, and expertise.

101.    In addition to the individual and collective fiduciary duty owed to Plaintiff by Defendants, the deposit by Plaintiff of $135,000 into Defendants' custody and control signified the existence of a fiduciary relationship.

102.    Plaintiff in fact acted specifically on Defendants' advice and direction in turning over the $135,000.

103.    Accordingly, Plaintiff expected that Defendants would adhere to a fiduciary standard in their dealings with Plaintiff.

104.    Defendants individually and collectively breached their fiduciary duty by failing to act according to a fiduciary standard.

105.    None of the Defendants acted according to the fiduciary duty owed to Plaintiff.

106.    If any one of the Defendants acted in accordance with the requisite fiduciary duties, Plaintiff would not have suffered any loss or would have suffered a lesser loss.

107.    Instead, Defendants acted in concert to keep their individual and collective misappropriation and conversion of Plaintiff's funds secret through various deceptions, avoidances, and false representations as described above and incorporated by reference herein.

108.    As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiff has sustained monetary damages in the amount of $135,000, exclusive of interest and costs.

109.    Defendants are therefore jointly and severally liable for Plaintiff's damages, which measure in excess of $135,000, and exclusive of interest and costs.

## COUNT VIII – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

110.    Plaintiff incorporates paragraphs 1 through 109 of this Complaint, and by this reference as though the same were set forth herein verbatim.

111.    During all times relevant, Defendants knew or should have known that a fiduciary relationship existed between Plaintiff and Defendants.

112.    Knowing that a fiduciary relationship existed between Plaintiff and Defendants, awareness by any fiduciary that another fiduciary was in breach of a fiduciary duty owed to Plaintiff, compelled action by alerted fiduciary to act on behalf of Plaintiff.

113.    The lack of action on the part of the informed fiduciary aware of a breach of another fiduciary's duty constitutes aiding and abetting breach of fiduciary duty, particularly when the informed fiduciary profits directly or indirectly from the breach.

114.    Elements of aiding and abetting a breach of fiduciary duty require the existence of a fiduciary duty, knowledge of the breach of fiduciary duty by the aider and abettor, and substantial assistance or encouragement by the aider and abettor in effecting that breach.

115.    Defendants individually and collectively knew or should have known that there was a fiduciary relationship between Plaintiff and Defendants by virtue of fact that Plaintiff placed $135,000 under the possession and control.

116.    Defendants nevertheless allowed Plaintiff's funds to be diverted from foreign currency trading and converted to uses, which they knew were not expected by Plaintiff and in breach of contract.

117.    By so doing, Defendants aided and abetted Morton's breach of fiduciary duty.

118.    As a direct and proximate result of Defendants aiding and abetting the breach of fiduciary duty, Plaintiff has sustained monetary damages in the amount of $135,000 exclusive of interest and costs.

## COUNT IX – RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

119.     Plaintiff incorporates paragraphs 1 through 118 of this Complaint, and by this reference as though the same were set forth herein verbatim.

120.     Defendants Sean David Morton, Melissa Morton, Daryl Weber and Joshua Weber acted with actual and apparent authority either as principals, partners, or as employees, agents and/or representatives of Defendants, and within the course of their duties and responsibilities as employees, agents and/or representatives of Defendants.

121.     As principals, partners, or as employees, agents and/or representatives of Defendants, each acted directly, or vicariously on behalf of the other Defendants, who are therefore jointly and severally directly or vicariously liable, under the theory of Respondeat Superior, for their individual and collective wrongful actions, and the resulting damages caused Plaintiff.

122.     The wrongful conduct, and the extent Defendants knew or should have known of the other's wrongful conduct, was continuous, repeated, and collective, and thereby constitutes intentional, outrageous, and malicious conduct, for which Plaintiff is entitled to both compensatory, and punitive damages from the principals.

123.     As a direct and proximate result of Defendants' individual or collective conduct as principals, partners, or as employees, agents and/or representatives, Defendant principals are vicariously liable under Respondeat Superior for damages caused Plaintiff.

## COUNT X – DEMAND FOR AN ACCOUNTING BY ALL DEFENDANTS

124.     Plaintiff incorporates paragraphs 1 through 123 of this Complaint and by this reference as though the same were set forth herein verbatim.

125.    Prior to Plaintiff's deposit of $135,000 in an account designated by Defendants, upon information and belief, Defendants planned to convert and misappropriate Plaintiff's funds.

126.    Defendants had no intention whatsoever of investing Plaintiff's funds according to the terms and conditions of an oral contract between Plaintiff and Defendants.

127.    Upon information and belief, immediately upon receipt of Plaintiff's funds, Defendants misappropriated the funds and disbursed various conversions and payments to various parties and themselves.

128.    In addition, upon information and belief, Defendants made disbursements to earlier investors who knew or should have known that the money they received was not part of a return on investments or money legitimately raised by Defendants.

129.    Therefore, Defendants should be ordered to provide Plaintiff with an accounting of all funds disbursed from August 2006 through to the present.

## COUNT XI – RESCISSION

130.    Plaintiff incorporates paragraphs 1 through 129 of this complaint, and by this reference as though the same were set forth herein verbatim.

131.    By way of alternative relief, Plaintiff seeks rescission due to the unlawful conduct of Defendants.

132.    Plaintiff seeks rescission of all investments made with any part of Plaintiff's $135,000 and restitution, as the Court deems appropriate.

## PRAYER FOR RELIEF

133.    Plaintiff Tim Saunders prays for the following relief against Defendants jointly and severally:

a.      An award of monetary damages in an amount to be proven; and,

b.      an award of reasonable attorney's fees and costs incurred to prosecute this action; and,

c.      punitive damages for the deliberate, willful, reckless, and malicious conduct of defendants which constitutes outrageous conduct; and

d.      such further relief as the Court deems just and equitable.

Respectfully submitted,

May 13, 2009
_____
Date

Richard J. Gerace
Attorney Id. No. 92176
2 Penn Center Plaza
Suite 200   1500 JFK Blvd
Philadelphia, PA 19102
(215) 854-6345  Voice
(484) 472-8749  Fax
(610) 328-6538  Direct

May 15, 2009
_____
Date

Mary P. Kehoe, Esq.
Lisman, Webster & Leckerling, P.C.
P.O. Box 728
Burlington, VT 05402-0728
(802) 864-5756 VOICE
(802) 864-3629 FAX
mkehoe@lisman.com

17

## VERIFICATION

Pursuant to 28 U.S.C § 1746, Tim Saunders hereby declares under penalty of perjury that he has read the allegations set forth in the above complaint and that he believes them to be accurate and true.

Executed on this ___30___ day of ___April___, 2009.

_____

Tim Saunders



State of Alaska

Anchorage_____ Judicial District

THIS IS TO CERTIFY that on the _____30ᵗʰ_____ day of _____April_____, of _____2009_____
                                    (date)              (month)              (year)

_____Timothy Allen Eaton Saunders_____, known to me to be the individual or
                    (name of individual)

individuals named by the within _____Court document_____,
                                        (document description)

personally appeared before me and acknowledged that (he/she/they) signed said document freely and

voluntarily for the uses and purposes stated within.

GIVEN UNDER MY HAND and official seal:

Dated: _____4/30/09_____

                                    _____
                                    (Signature of Notary)
                                    Notary Public for the State of Alaska

                                    My Appointment Expires: _____

┌─────────────────────┐
│                     │
│   Seal or Stamp     │
│       Here          │
│                     │
│                     │
└─────────────────────┘

y Public
S FOWLIS
of Alaska
xpires Sep. 19, 2012