UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Tim Saunders,
         Plaintiff,

         v.                                                      Civil Action No. 5:09-CV-125

Sean David Morton, Joshua Weber, Daryl
Weber, Melissa Morton, 27 Investments LLC,
Magic Eight Ball Distributing, Inc., Vajra
Productions LLC, Delphi Associates Investment
Group, Fraser Valley Trading,
         Defendants.

## REPORT AND RECOMMENDATION
(Docs. 29, 58)

Plaintiff Tim Saunders brings this action against various individual and corporate defendants under federal securities laws and several Vermont state law causes of action. (Doc. 1.) Specifically, Saunders seeks to recover the funds he invested into what he claims was a fraudulent investment scheme devised and executed by the named Defendants. Presently before the Court are Saunders' Motion for Default Judgment against Defendants Sean David Morton, Melissa Morton, 27 Investments LLC, Magic Eight Ball Distributing, Inc., Vajra Productions LLC, and Delphi Associates Investment Group (collectively, "the Defendants"),[1] and Motion to Dismiss Defendant Joshua Weber

---

[1] Saunders also moves for default judgment against Daryl Weber and Fraser Valley Trading, but he has already secured judgment against these Defendants, and each has been terminated from this lawsuit. (Docs. 14, 15.) However, in a separate Report filed today (Doc. 64), the Court recommends that Daryl Weber be reinstated as a party to this litigation with a renewed opportunity to defend.

1

from this suit. For the reasons set forth below, the Court recommends that each Motion be GRANTED.

## Background

On May 18, 2009, Saunders filed a Complaint alleging that Sean David Morton and the other named Defendants induced Saunders to invest $135,000 into a fraudulent investment scheme. The Complaint alleges what is colloquially known as a "Ponzi scheme," in which investor money is misappropriated for personal use and "to repay earlier investors, avert or settle pending lawsuits, cover up losses, [or] pay expenses." (Compl. ¶ 76.) Saunders alleges that the Defendants made materially false misrepresentations to solicit his investment, and then created false financial statements reporting that Saunders' money was profitably invested in the foreign currency market, when in fact it was either lost through poor investments or not invested at all. *Id*. ¶¶ 37-49. The scheme eventually collapsed when it could no longer support itself with new investor funds, at which point the Defendants broke off contact with Saunders. *Id*. ¶ 52. Eventually, Saunders was informed of the "[c]losure of Vajra Productions LLC, 27 Investments LLC and Magic Eight Ball Distributing." *Id*. ¶ 53. None of the money he invested has been returned.

Pursuant to this Court's Order (Doc. 25), Saunders served the Defendants on November 23, 2009 by leaving a copy of the summons and complaint at the door of Melissa and Sean David Morton's home (Doc. 26-1). *See* V.R.C.P. 4(d)(1); Fed. R. Civ. P. 4(e)(1). Under the Federal Rules of Civil Procedure at that time, the Defendants had

20 days thereafter to serve an Answer. Fed. R. Civ. P. 12(a)(1)(A)(i) (2007). On March 2, 2010, having received neither an Answer nor any other communication from the Defendants, Saunders applied for a clerk's entry of default against the Defendants, and the Clerk entered default the next day. (Doc. 28.) On March 5, 2010, Saunders filed the present Motion for Default Judgment, and the Court scheduled an evidentiary hearing to receive proof concerning damages. (Doc. 32.) Although the Defendants have never appeared in this action, Saunders provided them with more than two weeks notice of the hearing, which convened on April 8, 2010. None of the Defendants appeared at the hearing.[2]

## Discussion

Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment against defendants who have failed to plead or defend.[3] Fed. R. Civ. P. 55; *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The first step is to obtain a clerk's entry of default. Rule 55(a) empowers the clerk to enter default against defendants who have failed to plead or otherwise defend when the plaintiff demonstrates such failure through affidavit. By virtue of defaulting, defendants concede the accuracy of the factual averments made in the complaint as well as their liability arising therefrom. *See, e.g*, *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973

---

[2] For reasons unexplained, Saunders also provided notice of the evidentiary hearing to Daryl Weber, even though judgment against Weber had already entered. Unlike the Defendants at issue here, Weber *did* appear, ostensibly to challenge the entry of judgment against him. Since then, Weber has filed a Motion for Relief from the Default Judgment pursuant to Rules 55(c) and 60(b). (Doc. 56.) In a separate Report filed today (Doc. 64), the Court recommends granting Weber's Motion, and reinstating him as a Party.

[3] All further rule references in this Report and Recommendation are to the Federal Rules of Civil Procedure unless otherwise indicated.

3

F.2d 155, 159 (2d Cir. 1992) ("Where it is properly alleged in the complaint, proximate cause—going to liability—is completely and irrefutably established upon the defendant's default."). But allegations in the complaint concerning damages are not deemed to be true at this stage unless they are liquidated or susceptible to mathematical computation as of the default. *Id*.; *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

Second, having obtained a default, the plaintiff must next seek a judgment in one of two ways. Rule 55(b)(1) allows the clerk to enter judgment without court involvement when the defendants, who are neither minors nor incompetent, have defaulted for not appearing, and the plaintiff seeks damages of a "sum certain," that is, damages that are liquidated or susceptible to mere arithmetic calculation. In all other cases, Rule 55(b)(2) provides for the court's entry of default judgment. Motions for a court's entry of judgment are "left to the sound discretion of [the] district court," *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993), and the court may conduct hearings before entering judgment to determine the amount of damages. Fed. R. Civ. P. 55(b)(2)(B).

In this case, Saunders satisfied the first step by applying for and obtaining default against the Defendants, which the Clerk entered on March 3, 2010. Saunders next moved for default judgment based on the Defendants' complete failure to appear, seeking the recovery of his investment with the Defendants plus interest in addition to reasonable costs and fees. (Doc. 29-2.) Normally, this would present an appropriate case for a clerk's judgment because the Defendants failed to appear and the amount of damages can

be easily calculated without further fact-finding. *See KPS & Associates, Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003) (citing with approval the proposition that "[t]he term 'sum certain' in this context contemplates a situation in which, once liability has been established, there can be no dispute as to the amount due, as in actions on money judgments and negotiable instruments."). But because Saunders' Motion did not include any evidentiary verification of his damages, such as an affidavit setting forth the amount owed to him, the Court required a hearing to ascertain damages. (Doc. 32.) Having received evidence from Saunders at the April 8, 2010 hearing, the Court concludes that default judgment against the Defendants is appropriate, and recommends that Saunders' Motion be granted.

## I. The Court Has Jurisdiction To Enter Judgment

### A. Subject Matter Jurisdiction

The Court has authority to enter judgment only on those claims over which it is has subject matter jurisdiction. *See*, *e.g.*, *United States v. Forma*, 42 F.3d 759, 762 (2d Cir. 1994) (recognizing that a default judgment entered in the absence of subject-matter jurisdiction is void and must be vacated); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

In this case, federal question subject matter jurisdiction exists because Saunders' cause of action arises under federal securities law, namely, Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and its implementing regulation, Rule 10b-5, 17

C.F.R. § 240.10b-5.  Under Section 27 of the Exchange Act, "[t]he district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."  15 U.S.C. § 78aa; *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States.").  Additionally, this Court has supplemental jurisdiction over Saunders' state law claims pursuant to 28 U.S.C. § 1367(a), which grants this Court jurisdiction over all claims that "form part of the same case or controversy" as claims over which the Court has original jurisdiction.

To implicate Section 10(b) of the Exchange Act and Rule 10b-5, a plaintiff must allege deception, misrepresentation, or fraud in connection with the sale or purchase of securities.  *Ring v. AXA Financial Inc.*, 483 F.3d 95, 97 (2d Cir. 2007).  Saunders easily satisfies this standard here.  As for the fraud, Saunders claims—and by virtue of the default it is undisputed—that Melissa and Sean David Morton, both individually and through the various corporate Defendants, intentionally made false statements to Saunders about their financial acumen and materially misrepresented how they would use Saunders' money in order to induce his investment.  Saunders relied on these misrepresentations to his detriment, losing all of the money he invested with the Defendants.

This fraud was in connection with the purchase of securities, because Saunders' investment constitutes a "security" in the form of an "investment contract" as defined by § 3(a)(10) of the Exchange Act, 15 U.S.C. § 78c(a)(10), and Supreme Court case law. Under the broad formulation first articulated in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946), an "investment contract" is "a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of a promoter or third party[.]" *United States v. Leonard*, 529 F.3d 83, 88 (2d Cir. 2008) (quoting *Howey*, 328 U.S. at 298-99). This "definition 'embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of money of others on the promise of profits.'" *S.E.C. v. Edwards*, 540 U.S. 389, 393 (2004) (quoting *Howey*, 328 U.S. at 299). Accordingly, when determining whether a particular transaction constitutes an "investment contract," courts should look beyond the formal terms of the arrangement and assess whether the reasonable expectation was one of significant investor control, or third-party control over the investor's funds. *Leonard*, 539 F.3d at 85.

Here, the Defendants solicited Saunders' money on the promise of profits based entirely on the Defendants' control over that money. Saunders delivered a total of $135,000, and his expectation, explicitly confirmed by the Defendants' repeated representations, was that he would receive profits based on investments conducted by others on his behalf. This is a paradigmatic "investment contract," and the Court therefore has subject matter jurisdiction over this suit pursuant to the Exchange Act.

### B. Personal Jurisdiction

District courts in the Second Circuit are not required to determine that they have personal jurisdiction over defendants against whom they enter default judgment for failure to appear. *Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146, 161 (2d Cir. 2005). Unlike subject matter jurisdiction, the limitation on personal jurisdiction is an individual due process right that can be waived, and "[a] court entering a default judgment may assume that it has jurisdiction over the defendant when the defendant does not appear in court to contest the judgment." *Id.* (quoting *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 730 (2d Cir. 1998)). Indeed, establishing personal jurisdiction before entering judgment may be an entirely futile exercise, since defendants are "always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982). Thus, upon collateral review, the judgment court's determination that service was proper and that it had personal jurisdiction is not preclusive. *Transaero*, 162 F.3d at 730.

Nonetheless, the Court briefly explains here that Saunders properly executed service upon the Defendants, and that the Defendants are subject to this Court's personal jurisdiction. First, Saunders served the Defendants by leaving a copy of the summons and complaint at the dwelling house or usual place of abode of Melissa and Sean David Morton. Saunders obtained Court permission to execute service in this manner after demonstrating, in accordance with the Vermont and Federal Rules of Civil Procedure,

8

that service by other means could not be made with due diligence.  (Doc. 25); Fed. R. Civ. P. 4(e)(1); V.R.C.P. 4(d)(1).

Second, "[i]t has long been the rule in this Circuit that" when a claim under the Exchange Act is involved, "Section 27 of [the Act], which provides for nationwide service of process, confers personal jurisdiction over the defendants served within the United States."  *Steinberg & Lyman v. Takacs*, 690 F. Supp. 263, 265-66 (S.D.N.Y. 1988) (internal citation omitted); *see also Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991) ("Section 27 confers personal jurisdiction over a defendant who is served anywhere within the United States.").  And given personal jurisdiction established by the Exchange Act, the Court also has personal jurisdiction over the Defendants with respect to Saunders' supplemental state law claims.  *See*, *e.g.*, *Clute v. Davenport Co.*, 584 F. Supp. 1562, 1580 (D. Conn. 1984) (upholding supplemental jurisdiction for Connecticut securities law claims in Exchange Act suit).

In sum, the Exchange Act establishes both subject matter jurisdiction over Saunders' claims, and personal jurisdiction over the Defendants.  Accordingly, the Court has the authority to enter judgment under Rule 55(b)(2) in this case.

## II.  Default Judgment Against the Defendants Is Warranted

Having established jurisdiction, the task of entering default judgment is largely ministerial.  But for Saunders' failure to submit adequate documentary support of his damages claim, the Clerk would have been *required* to enter default judgment against the Defendants without a hearing and without any inquiry by the Court.  *See* Fed. R. Civ. P.

9

55(b)(1) (explaining that the clerk "must enter judgment" when the criteria for clerk's judgment are satisfied). Now, following the April 8 hearing, the Court is in possession of an affidavit from Saunders that establishes the amount of his loss and the costs he has incurred to date. Specifically, the affidavit states that Saunders mailed a check to Melissa and Sean David Morton made out to Vajra Productions LLC in the amount of $5,000 that was cashed on March 2, 2007. Saunders then mailed another check to the Mortons made out to Vajra Productions in the amount of $130,000, a copy of which is attached to Saunders' affidavit, on July 16, 2007. (Doc. 42, Saunders Aff. ¶¶ 2-4.). Saunders received nothing in return for these investments. *Id*. ¶ 17. His legal fees and costs in prosecuting this action have reached $42,000. *Id*.

Although the Court retains discretion to deny Saunders' request for default judgment, the Court sees no reason to recommend exercise of that discretion here. The Defendants, who apparently evaded service in this action, have not appeared and did not communicate with either the Court or Saunders in any way prior to defaulting on March 3, 2010. On April 6, 2010—over a month after the entry of default—the Court received a sworn letter from one Susan Shumsky claiming that Sean Morton is an ambassador to the United States from the "Republic of New Lemuria," and that she is his "Executive Secretary." The letter argues that Morton's diplomatic status confers civil immunity upon himself and his wife, and that the repeated attempts to serve the Mortons constitute "harassment" that, in Shumsky's opinion, is "a clear violation of international law." (Doc. 44.)

Even setting aside the possibilities that Shumsky has engaged in the unauthorized practice of law, or has perjured herself by invoking the immunizing effects of employment with an imaginary country, this letter in no way detracts from Saunders' claim for judgment. Once the default is entered, defendants have no further standing to contest the factual allegations made against them, and may contest the plaintiff's right to recover only by either showing good cause as to why the default should be set aside under Rule 55(c), or contesting the *amount* of plaintiff's recovery. 10A Wright & Miller, *Federal Practice and Procedure* § 2688 (3d ed. 1998). Shumsky's letter achieves neither, and, of course, the Defendants did not appear at the pre-judgment evidentiary hearing for which they had more than two weeks notice.

The Court can only conclude at this point that the Defendants have chosen not to defend or in any way participate in this litigation. The consequence of this choice is default judgment, and the Court recommends that Saunders' motion for default judgment be granted as set forth below.

### III. The Court Should Certify This Default Judgment As Final And Appealable Pursuant to Rule 54(b)

In a separate Report and Recommendation filed today (Doc. 64), the Court recommends reinstating previously terminated Defendant Daryl Weber in this litigation, and affording him an opportunity to defend. If that recommendation is adopted, then entering default judgment against the remaining Defendants would leave only Weber as an active Defendant in this case.

Rule 54(b) permits the court to enter a final, appealable judgment against fewer

than all defendants if the court certifies that "there is no just reason for delay" and directs the clerk to enter judgment. Fed. R. Civ. P. 54(b). The decision to grant this certification and enter a partial final judgment is left to the discretion of the district court, which is to be exercised "in the interest of sound judicial administration." *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1092 (2d Cir. 1992) (internal quotation marks omitted). The "historic federal policy against piecemeal appeals" requires the court to use its discretion "sparingly," certifying a partial final judgment "only if there exists' some danger of hardship or injustice through delay which would be alleviated by immediate appeal.'" *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 40-41 (2d Cir. 2003) (quoting *Cullen v. Margiotta*, 618 F.2d 226, 228 (1980)).

A final Rule 54(b) certification is appropriate in this case for two reasons. First, partial final judgment is in accord with sound judicial administration because the default judgments are unrelated to the merits of Saunders' claims against Weber, and any appeal taken from the entry of default judgment would not duplicate issues relating to the ongoing litigation against Weber. *See*, *e.g.*, *Federal Deposit Ins. Corp. v. Tripati*, 769 F.2d 507, 508 (8th Cir. 1985) (upholding Rule 54(b) certification when "[t]he default judgment is unrelated to the merits of the claims against the remaining defendants[,] [and] therefore the underlying action does not need to be reviewed as a single unit.").

Second, as Saunders points out, the Securities and Exchange Commission has commenced parallel civil litigation against Melissa and Sean David Morton, Vajra Productions LLC, 27 Investments LLC, and Magic Eight Ball Distributing. *S.E.C. v.*

*Morton et al.*, No. 1:10-CV-01720 (S.D.N.Y. Filed March 4, 2010). If Saunders must wait until his claims against Weber are fully resolved to secure final judgment against these Defendants, then an intervening judgment for the S.E.C. could limit Saunders' ability to protect or enforce his judgment. Thus, there is the possibility that further delay would cause "hardship or injustice" which would be alleviated by certifying final judgment and permitting Saunders to collect on his judgment immediately. *See Tripati*, 769 F.2d at 508 (finding that, when the defaulting parties' "assets were rapidly being dissipated by other criminal and civil litigation, the equities weighed in favor of certification so that the [plaintiff] could begin collecting on the judgment as soon as possible.").

## **Conclusion**

Based on the foregoing reasons and the evidence received from Plaintiff Saunders, the Court recommends GRANTING Saunders' Motion for Default Judgment (Doc. 29), and entering final judgment with Rule 54 certification against the Defendants Sean David Morton, Melissa Morton, 27 Investments LLC, Magic Eight Ball Distributing, Inc., Vajra Productions LLC, and Delphi Associates Investment Group, jointly and severally, as follows:

| | |
|---|---|
| $ 5,000 | Principal, with the accrual of 12% prejudgment interest from March 2, 2007 |
| $130,000 | Principal, with the accrual of 12% prejudgment interest from July 16, 2007 |
| $42,000 | Attorney Fees and costs |

13

Postjudgment interest accruing from the date of judgment at the applicable federal rate.

Finally, the Court recommends GRANTING Saunders' Motion to Dismiss Defendant Joshua Weber (Doc. 58), whom Saunders has been unable to serve.

Dated at Burlington, in the District of Vermont, this 28th day of June, 2010.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* Local Rules 72(a), 72(c), 73(e); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(d).