UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


Tim Saunders,
        Plaintiff,

        v.                            Civil Action No. 5:09-CV-125

Sean David Morton, Joshua Weber, Daryl
Weber, Melissa Morton, 27 Investments LLC,
Magic Eight Ball Distributing, Inc., Vajra
Productions LLC, Delphi Associates Investment
Group, Fraser Valley Trading,
        Defendants.


## REPORT AND RECOMMENDATION
(Doc. 56)

      Plaintiff Tim Saunders brings this action against various individual and corporate

defendants alleging federal securities fraud and violations of other state law causes of

action.  (Doc. 1.)  Specifically, Saunders seeks to recover the funds he invested into what

he claims was a fraudulent investment scheme devised and executed by the named

Defendants.  Presently before the Court is Defendant Daryl Weber's Motion for Relief

from the Clerk's entry of default judgment entered against him on August 21, 2009.

(Doc. 56.)  Weber, proceeding *pro se*, seeks various remedies including vacation of the

judgment against him and leave to file a Rule 12 motion or Answer to the Complaint.

For the reasons set forth below, I recommend that the Court GRANT Weber's motion in

part.

1

## Background

On May 18, 2009, Saunders filed a Complaint alleging that Sean David Morton, Daryl Weber, and the other named Defendants induced Saunders to invest $135,000 into a fraudulent investment scheme. The Complaint alleges what is colloquially known as a "Ponzi scheme," in which investor money is misappropriated for personal use and "to repay earlier investors, avert or settle pending lawsuits, cover up losses, [or] pay expenses." (Doc. 1, Compl. ¶ 76.) In essence, Saunders alleges that the Defendants made materially false misrepresentations to solicit his investment, and then created false financial statements reporting that Saunders' money was profitably invested in the foreign currency market, when in fact it was either lost through poor investments or not invested at all. *Id*. ¶¶ 37-49. The scheme eventually collapsed when it could no longer support itself with new investor funds, at which point the Defendants broke off contact with Saunders. *Id.* ¶ 52. None of the money he invested has been returned.

The Complaint alleges that Sean David Morton was largely responsible for fraudulently soliciting and improperly controlling investor money, but it does not explain the precise nature of Weber's involvement in the scheme. For example, the Complaint alleges that "Morton holds himself out across the United States as an investment expert," and that he "uses a series of LLCs, investments [sic] schemes, marketing tools and incentives to induce investors to invest with him." (Doc. 1, Compl. ¶¶ 27, 34.) It also alleges that Morton "promotes his investment expertise through a nationally syndicated radio show and written newsletter," that he falsely "claimed successful trading and profits

during guest appearances on a well-known radio show" to induce investors, and that he dealt personally with Plaintiff Saunders. *Id*. ¶¶ 28, 45.

Allegations about Weber are more general. The Complaint says that Weber was a co-owner and operator, along with Morton, of Defendant Vajra Productions, and that he was an "officer, director, agent and/or employee of Frazer [*sic*] [Valley Trading]." *Id*. ¶¶ 13, 15. Saunders also alleges that Weber operated the investment fund into which Saunders' money was placed, and that Weber exercised that control through Fraser Valley Trading or "other as yet unidentified brokerage firms." *Id*. ¶¶ 17, 50. Saunders does not specifically allege—either in the Complaint or in subsequently filed affidavits— that he had any contact with, or relied on any misrepresentations made by, Daryl Weber. Instead, as far as the record demonstrates thus far, Saunders' knowledge of Weber's participation is limited to his belief—based on unstated facts—that Weber and Morton were "partners" (Compl. ¶ 33; Doc. 42, Saunders Aff. ¶ 6), and that Weber controlled the investment fund into which Morton placed Saunders' money. (Compl. ¶ 50.)

In his Motion, Weber concedes that he operated an investment fund containing money from Saunders and others who invested with Sean David Morton, but denies that he was Morton's "partner," and that he was employed, in any capacity, with Fraser Valley Trading.[1] (Doc. 56 ¶¶ 3-5.) Rather, Weber bills himself as an "independent contractor" who was "engaged" by a company called Stoddard Trading LLC to buy, sell,

---

[1] Weber does not specifically address whether he was a co-owner or operator of Vajra Productions, but his general denial of being Morton's partner would seem, by implication, to deny this as well.

and trade foreign currencies using accounts created by Morton and the corporate defendants. *Id.* ¶¶ 3, 9. As Weber describes it, Morton entered into an agreement with Fraser Valley Trading, which in turn engaged Stoddard Trading, which, in one final maneuver, hired Weber to operate the investment fund into which Morton deposited his investors' money. Morton then provided Weber with the "password, code or account number" to access the accounts, and, according to Weber, any profits or losses from Weber's transactions were reported directly to Morton. *Id.* ¶¶ 13, 15. Weber concedes that his compensation was based on the performance of the investments he made using Morton's accounts, but only indirectly through his contract with Stoddard Trading, and only after Morton compensated Fraser Valley and Fraser Valley paid Stoddard Trading. *Id.* ¶¶ 16-17.

Finally, while Weber describes a rather attenuated relationship with Morton, he also claims detailed knowledge about several aspects of Morton's business. In addition to receiving account numbers and passwords directly from Morton, Weber avers that "all of the funds provided by [Saunders] to [Morton] . . . were deposited to one or the other of the [trading] accounts opened by . . . Morton," that "[p]rofits from trade transactions were disbursed at the discretion of . . . Morton," that any communication or transaction between Morton and Saunders occurred while Morton was in California and Saunders was in Alaska, and that Morton organized and registered the corporate defendants. *Id.* ¶¶ 8, 9, 16-18. How or why Weber acquired all of this information while working as an

independent contractor for a company that contracted with another company that, finally, was working directly for Sean David Morton, is left unexplained.

After filing the Complaint, and with considerable assistance from the Chittenden County Sheriff's Department, Saunders personally served Weber in Burlington, Vermont on June 10, 2009. (Doc. 5.) Weber did not file an answer, communicate with the Court or Saunders, or take any other defensive action until he appeared at an evidentiary hearing held on April 8, 2010, a full nine months after his answer to the Complaint was due. By that time, Saunders had already moved for and obtained both a default and a Clerk's entry of default judgment against Weber. (Docs. 10, 14.) Saunders had applied for the entry of default on August 13, 2009, and default entered on August 17, 2009. (Doc. 10.) Four days later, on August 21, 2009, the Clerk entered judgment against Weber in the amount of $176,427.67 with post-judgment interest accruing ever since. (Doc. 14.) Weber received personal service of Saunders' application for default on September 8, 2009 (Doc. 19), which was about two weeks after judgment entered, but seven months before Weber took any action in this case.[2]

When Weber appeared at the April 8 hearing, convened to determine damages as to other Defendants against whom Saunders seeks default judgment, there was no record that Weber had notice of the judgment already entered against him. Consequently, the Court informed him that he was no longer a party to the litigation, that, at that time, he

---

[2] Except to provide Saunders' counsel with an address at which Weber would accept service, which he did via email on September 2, 2009. (Doc. 41-3.)

lacked standing to contest the Complaint's factual allegations, and that his only recourse was to move to have the judgment set aside. Weber then filed the present Motion for Relief from Default Judgment on April 27, 2010. (Doc. 56.)

### Discussion

Federal Rule of Civil Procedure 55(c) provides that a "court may set aside an entry of default for good cause, and . . . may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). In relevant part, Rule 60(b) authorizes a court to relieve a party from final judgment for "mistake, inadvertence, surprise, or excusable neglect," or if "the judgment is void." Fed. R. Civ. P. 60(b)(1), (4).

Weber primarily proceeds under Rule 60(b)(4), claiming that the judgment against him is void because either this Court lacks subject matter jurisdiction, or dismissal is required under the doctrine of *forum non conveniens*. (Doc. 56 ¶ 2.) But he also makes an apparent attempt, in denying a number of Saunders' factual allegations, to justify relief either under the "good cause" standard for vacating default under Rule 55(c), or what is the more onerous "excusable neglect" standard for vacating judgment under Rule 60(b). The court is directed to consider the same factors whether deciding if the defaulting party has demonstrated "good cause" or "excusable neglect." But the factors are to be applied more leniently toward the defaulting party, and in favor of granting relief, when analyzed under Rule 55's "good cause" standard.

Here, Saunders urges the Court to apply Rule 60's more demanding excusable neglect standard because judgment has entered against Weber. (Doc. 59.) But as

explained more fully below, Rule 55(c)'s more forgiving standard must be applied

because the Court has not made the requisite Rule 54(b) certification that the judgment

against Weber, a single defendant among several, is final.  Under this standard, Weber's

Motion should be granted to the extent that he seeks a renewed opportunity to defend

against Saunders' claims.

## I.      Weber's Default Should Not Be Vacated For Lack Of Subject Matter Jurisdiction Or Improper Forum

Weber argues that this Court lacks subject matter jurisdiction over Saunders'

claims, and alternatively that Saunders' Complaint must be dismissed under the doctrine

of *forum non conveniens*, because many (though not all) of the events out of which

Saunders' suit arises took place outside of Vermont.  Weber would apparently prefer to

litigate this matter in New York or California.

Both of Weber's arguments are unpersuasive.  This Court has original jurisdiction

over Saunders' claims that arise under federal securities laws (regardless of where the

alleged violations of those laws occurred), and supplemental jurisdiction over Saunders'

state law claims.  Next, dismissal because of an inconvenient forum under *forum non

conveniens* is appropriate only when the preferred forum is a foreign jurisdiction, and as

such the doctrine is inapplicable here.  And even the domestic analog to *forum non

conveniens*—a transfer to a more convenient forum under 28 U.S.C. § 1404(a)—cannot

apply to undo a default judgment, particularly when, as here, the defaulting party is a

resident of the state in which the judgment court sits.  Finally, to the extent that Weber

contends that venue does not lie in this District, he has waived that defense by defaulting.

### A.    Subject Matter Jurisdiction

In his Complaint, Saunders invokes this Court's original jurisdiction over claims arising under federal law, and, in particular, the Securities Exchange Act of 1934. Weber does not dispute that Saunders' suit arises under the Exchange Act, but argues that subject matter jurisdiction does not lie because many of the events described in Saunders' Complaint occurred outside of Vermont. As Weber says, "any actions or decisions made regarding the deposit or withdrawal of funds from accounts used in the currency trades . . . were initiated from jurisdictions other than Vermont and all deposits or withdrawals were from accounts located in the State of New York." (Doc. 56 ¶ 21.) Setting aside Weber's concession that he conducted trades with Saunders' money from computers in Vermont, his argument is wrong because subject matter jurisdiction does not depend on the place where the alleged securities fraud took place.

Section 27 of the Exchange Act provides, "[t]he district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." 15 U.S.C. § 78aa; *see also* 28 U.S.C. § 1331 ("the district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States."). Since this suit is brought in a district court of the United States to enforce a liability created by Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and its implementing regulation Rule 10b-5, 17 C.F.R. § 240.10b-5, subject matter jurisdiction exists over

Saunders' federal claims. In addition, this Court has supplemental subject matter jurisdiction over Saunders' state law causes of action pursuant to 28 U.S.C. § 1367(a), which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to [the federal] claims in the action . . . that they form part of the same case or controversy." Accordingly, the judgment against Weber is not void for lack of subject matter jurisdiction.

### B. *Forum Non Conveniens*

Weber claims that Saunders' Complaint must be dismissed under the doctrine of *forum non conveniens* because "the contacts with Vermont are so small and few when compared to other jurisdictions," particularly New York and California. (Doc. 56 ¶¶ 8, 21, 24.)

*Forum non conveniens* allows a federal court to dismiss an action even when the court has proper venue when "the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else." *Grammenos v. Lemos*, 457 F.2d 1067, 1074 n.5 (2d Cir. 1972). But since the enactment of 28 U.S.C. § 1404(a), "the federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad." *American Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994). Here, Weber does not propose a foreign jurisdiction in which this suit should be brought, so *forum non conveniens* does not provide him relief.

Weber's argument also fails if it is analyzed under 28 U.S.C. § 1404(a), the statutory domestic analog to the doctrine of *forum non conveniens*. § 1404(a) permits district courts to transfer any civil action "to any other district or division where it might have been brought" for "the convenience of parties and witnesses" and "in the interest of justice[.]" The Court rejects this argument for three reasons.

First, even in cases where transfer would be appropriate, § 1404(a) is not jurisdictional, and therefore does not affect the validity of an existing judgment. Indeed, reliance on § 1404(a) presupposes both jurisdiction and venue, and therefore does not support vacating the judgment against Weber. *See Polk v. New York State Dept. of Correctional Servs.*, 722 F.2d 23, 25 (2d Cir. 1983) (explaining that transfer pursuant to § 1404(a) is appropriate when the suit would be "properly maintainable" in the transferring court).

Second, it would be illogical to vacate a default judgment merely because the forum is inconvenient. To assess whether proceeding with this litigation in Vermont is sufficiently convenient for the parties and witnesses is to assume the very thing that Weber is trying to prove, namely, that judgment should be vacated and the suit against him resuscitated. Obviously, if the default judgment stands and the suit against him remains closed, then no one will be inconvenienced, and there would be no reason to transfer the action. This circular argument does not advance Weber's position.

Third, Weber has provided two different addresses at this point, both of which are in Chittenden County and one of which is within blocks of the Federal Courthouse.

(Doc. 41-3.)  Weber also accepted personal service of the Complaint in Burlington.

(Doc. 5.)  Given that, it is impossible to take seriously his claims of "inconvenient

forum," and his local residence is a further independent basis on which the Court declines

to vacate the judgment against Weber for the sake of convenience.

## C.    Venue

To the extent that Weber seeks to challenge venue in this District, he has waived

that defense by defaulting.  As one treatise explains, "proper venue is not essential to a

valid judgment; therefore a venue defect will be waived by failing to appear and suffering

a default judgment."  10A Charles A. Wright & Arthur R. Miller, *Federal Practice and

Procedure* § 2695 (3d ed. 1998); *see also Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)

("a defendant, properly served with process by a court having subject matter jurisdiction,

waives venue by failing seasonably to assert it, or even simply by making default.").

This conclusion is unchanged by the fact that, below, the Court recommends vacating the

judgment and default against Weber.  Weber is not free of fault for his failure to appear,

and he should be reinstated to this suit on the condition that he has waived the defense of

improper venue by failing to timely raise the issue in response to Saunders' Complaint.

*See* 10A Wright & Miller § 2700 ("The court's inherent power and use of discretion . . .

enables it to set aside default entries on various conditions.").

## II.    Weber's Default Should Be Vacated For "Good Cause"

In addition to vacating void judgments under Rule 60(b)(4), Rule 55(c) permits

courts to set aside defaults for "good cause," and to set aside default judgments under

Rule 60(b)(1) for "excusable neglect." Fed. R. Civ. P. 55(c), 60(b)(1). In the Second Circuit, the factors to examine in deciding whether to set aside a default or a default judgment are the same, but "courts apply the factors more rigorously in the case of a default judgment, because the concepts of finality and litigation repose are more deeply implicated in the latter action." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *see also American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996) ("A motion to vacate a default is subject to a less rigorous standard than applies to a Rule 60(b) motion to vacate a default judgment.").

In this case, the Court must apply the factors more leniently towards Weber, as though proceeding solely under Rule 55(c), because the entry of default judgment against Weber was not certified as a final partial judgment under Rule 54(b).

### A.     Rule 55(c)'s "Good Cause" Standard Applies To Weber's Motion

The Clerk's default judgment against Weber is not final because it was not so certified under Rule 54(b), and therefore does not implicate Rule 60(b), which applies only to final, appealable judgments. When judgment entered against Weber, a number of other Defendants, including Sean David and Melissa Morton, remained in the litigation. Thus, the judgment order adjudicated Saunders' claims against only one, and not all, of the parties. As such, the judgment could only become final with a Rule 54(b) certification from the Court expressly finding "no just reason for delay" and directing the clerk to enter judgment. Fed. R. Civ. P. 54(b); *see also In re Air Crash at Belle Harbor, NY*, 490 F.3d 99, 108 (2d Cir. 2007); *Davis v. Nat'l Mortg. Corp.*, 320 F.2d 90, 91 (2d

Cir. 1963) (requiring Rule 54(b) certification to finalize a default judgment against fewer than all parties) .  Without this certification, "any order or other decision, however designated, that adjudicates . . . the rights and liabilities of fewer than all the parties does not end the action as to any of the . . . parties[.]"  Fed. R. Civ. P. 54(b).

There is no Rule 54 certification of the judgment against Weber, and therefore it is not final.  This requires the Court to apply Rule 55(c)'s "good cause" standard to Weber's Motion for Relief because, according to its own terms, Rule 60 applies only to "final" judgments.  *Federal Deposit Ins. Corp. v. Francisco Inv. Corp.*, 873 F.2d 474, 478 (1st Cir. 1989) (stating that the Rule 55(c) standard applies to a default judgment which has not been certified as final pursuant to Rule 54(b)); *Jackson v. Beech*, 636 F.2d 831, 835-36 (D.C. Cir. 1980) (explaining that a motion to set aside default is analyzed under Rule 60 only when the default judgment is "certified as final and appealable under Rule 54(b)"); Fed. R. Civ. P. 60(b) (providing grounds for relief from a "*Final*" judgment) (emphasis added).

### B.    "Good Cause" Standard

In deciding whether to set aside a default for good cause under Rule 55(c), there are three macro-level considerations for the Court to keep in mind.  First, "[a] motion to vacate a default judgment is 'addressed to the sound discretion of the district court,'" who is best positioned to evaluate the facts and equities present in a particular case.  *Green*, 420 F.3d at 104 (quoting *State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166 (2d Cir. 2004)).  Second, in exercising this discretion the

court must remember that "a default judgment is 'the most severe sanction which the court may apply,'" *Id.* (quoting *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995)), and there is a "strong 'preference for resolving disputes on the merits.'" *Id.* (quoting *Powersave Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)). For this reason, "all doubts must be resolved in favor of the party seeking relief from the judgment[.]" *Id.* Third, and of relevance here, "concerns regarding the protection of a litigant's rights are heightened when the party held in default appears *pro se*." *Enron*, 10 F.3d at 96. Thus, "as a general rule a district court should grant a default judgment sparingly and grant leave to set aside the entry of default freely when the defaulting party is appearing *pro se*." *Id.*

With this background in mind, the court's discretion in deciding Weber's motion is guided by three factors: (1) whether Weber's default was willful; (2) whether Weber demonstrates the existence of a meritorious defense; and (3) whether, and to what extent, vacating the default will prejudice Saunders. *Green*, 420 F.3d at 108 (applying factors under Rule 60(b)); *Enron*, 10 F.3d at 96 (applying same factors under Rule 55(c)).

### i.     Willfulness

"[W]illfulness in the context of a judgment by default requires 'something more than mere negligence,' such as 'egregious or deliberate conduct[.]'" *Green*, 420 F.3d at 109 (quoting *Am. Alliance*, 92 F.3d at 60). A showing of bad faith, while certainly sufficient to establish willfulness, is not required. *Gucci Am. Inc., Guess, Inc. v. Gold Center Jewelry*, 158 F.3d 631, 634-35 (2d Cir. 1998).

Here, there is no question that Weber defaulted willfully, and this factor counts against granting his Motion. As was the case in *RC Entertainment, Inc. v. Rodriguez*, 1999 WL 777903, at *1-2 (S.D.N.Y. 1999) (unpublished), the "factual record is clear. The defendant[] [was] properly served and did not timely answer or file [a] motion[.]"

Weber attempts to justify his tardiness by saying that he could not afford an attorney, and making conclusory, unsupported assertions about suffering from anxiety of the sort that prevents the timely filing of court documents. (Doc. 56 ¶ 25.) Weber's inability to engage an attorney does not excuse the delay, because it does not explain why Weber could not file *something*, or make *any* communication to the Court or opposing counsel to indicate his intent to defend. Weber does not claim that he was unaware of the suit (nor could he, since he was personally served), or of his duty to respond within the prescribed time limit. Weber's unsupported, unsworn claim of anxiety similarly does not mitigate his culpability, particularly since he proved himself more than able to file the present Motion for Relief.

This finding of willfulness is significant, as the Second Circuit has occasionally remarked that "[a] default should not be set aside when it is found to be willful," *Action S.A. v. Marc Rich Co., Inc.*, 951 F.2d 504, 507 (2d Cir. 1991), and has "refused to vacate a judgment where the moving party had apparently made a strategic decision to default." *Am. Alliance*, 92 F.3d at 60. But this case is distinguishable from those in which courts have upheld default judgments solely because of a willful default. Such cases typically involve application of the more onerous Rule 60(b) standard, *see*, *e.g.*, *Wagstaff-EL v.*

*Carlton Press Co.*, 913 F.2d 56, 57 (2d Cir. 1999); *Action S.A.*, 951 F.2d at 507; *S.E.C. v. Breed*, 2004 WL 1824358, at *12 (S.D.N.Y. 2004), and more egregious willfulness by the defaulting party that is not present here.  *See*, *e.g., Action S.A.*, 951 F.2d at 507 (rejecting request to set aside default judgment because defaulting party deliberately waited *eight years* to seek relief).  Because Weber is held to the lesser Rule 55(c) standard, and because he delayed for the comparatively short—though still inexcusable—duration of nine months, his willfulness counts against granting his Motion but is not sufficient to defeat it entirely.

### ii.   Meritorious Defense

A "defense is meritorious if it is good at law so as to give the fact-finder some determination to make."  *Am. Alliance*, 92 F.3d at 61.  "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense."  *Enron Oil*, 10 F.3d at 98.  And to establish the defense, "[a] 'defendant must present more than conclusory denials.'"  *Green*, 420 F.3d at 110 (quoting *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001)).

In his Motion for Relief, Weber attempts to establish his defense by asserting facts to show that his role in investing Saunders' money was entirely separate from any fraud allegedly committed by Sean David Morton.  Weber claims he merely controlled the investment funds into which Morton and the corporate Defendants (under Morton's control) deposited money.  He denies any formal business relationship with Morton,

saying instead that he was an independent contractor hired by Stoddard Trading, which in turn was working for Fraser Valley Trading which was working directly with or on behalf of Morton.  Weber also denies any direct relationship with Saunders, saying that "[a]t no time did [he] ever meet, solicit, contact, contract with or make false representations to the Plaintiff, Tim Saunders, to encourage or cause him to transfer funds to Defendant, Sean David Morton[.]"  (Doc. 56 ¶ 7.)

Saunders provides no meaningful response to the possibility that Weber has a meritorious defense, saying nothing beyond the conclusory assertion that "Weber has shown no 'Meritorious Defense.'"  (Doc. 59 at 3.)  As it turns out, Saunders' response to Weber's Motion is not all that is deficient.  A review of the Complaint reveals that Saunders' fraud (and in particular, securities fraud) allegations against Weber could be vulnerable to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  On this basis, the "meritorious defense" factor supports Weber's request for relief.  *See*, *e.g.*, *Coursey v. City of Camden*, 2009 WL 3756936, at *2 (D.N.J. 2009) (unpublished) (finding a meritorious defense when defaulting party noticed its intent to file a Rule 12(b)(6) motion to dismiss); *Hayek v. Big Brothers/Big Sisters of America*, 198 F.R.D. 518, 524 (N.D. Iowa 2001) (finding "sufficiently 'meritorious' defense" to weigh in favor of vacating default when defects itemized in the defaulting party's proposed Rule 12(b)(6) motion were "arguably present" in the Complaint).

The basic elements of Saunders' securities fraud claim under Section 10(b) and Rule 10b-5 are "(1) a material misstatement or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance . . . , (5) economic loss, and (6) 'loss connection, *i.e.*, a causal connection between the material misrepresentation and the loss.'" *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 478 (2d Cir. 2008) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005)); 17 C.F.R. § 240.10b-5.

Under Rule 9 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA"), securities fraud must also be pled with particularity. *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 168-69 (2d Cir. 2000); Fed. R. Civ. P. 9; 15 U.S.C. § 78u-4(b)(1)-(2). This requires the Complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (internal quotation marks omitted).[3] And when fraud is alleged against multiple defendants, the Complaint must particularly state the allegations attributable to each individual defendant. *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). A defendant who does not

_____

[3] The PSLRA provides for a substantively similar pleading standard. It says that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). It also mandates a heightened standard for pleading the requisite state of mind. 15 U.S.C. § 78u-4(b)(2).

actually make a false or misleading statement could be accused only of aiding and

abetting or conspiracy, neither of which gives rise to private liability under § 10(b). *Cent.*

*Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994)

("a private plaintiff may not maintain an aiding and abetting suit under § 10(b).");

*Dinsmore v. Squadron, Ellenoff, Plesent, Scheinfeld & Sorkin*, 135 F.3d 837, 838 (2d Cir.

1998) (holding that there is no private cause of action for conspiracy to violate § 10(b) or

Rule 10b-5).

Under this heightened pleading standard, Saunders is required to plead *each*

element of a § 10(b) claim as to *each* individual Defendant, including Weber. But

reading the Complaint in its current form, one searches in vain for an allegation that

Weber personally made any materially false statements or omissions on which Saunders

relied, or that any such misrepresentations were made "in connection with the purchase or

sale of any security." Aside from the specific allegations made against Sean David

Morton, the Complaint attributes various misrepresentations to the "Defendants" in

general.[4] The Second Circuit considered a similarly crafted Complaint in *Luce v.*

*Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986) and concluded that "[s]uch allegations, which

---

[4] For example, "*Defendants* periodically release false statements such as '[We are] on track for twice as much profit' to induce Plaintiff to act or forebear from acting."; "When Plaintiff expressed an interest in investing over $100,000 with *Defendants* on or about June 1, 2007, *Defendants* issued false statements to induce Plaintiff to invest."; "Once *Defendants* induced Plaintiff to act on the 'Heaven and Earth' investment, Defendant Melissa Morton diverted his $135,000 into a Vajra account"; "*Defendants* commingled the funds and misappropriated funds to benefit themselves at the expense of Plaintiff"; "*Defendants* continued to issue false statements to Plaintiff such as 'The traders have been making several thousands a day[.]'" (Doc. 1, Compl. ¶¶ 36, 37, 39, 41, 42) (emphasis added).

fail to specify the time, place, speaker, and sometimes even the content of the alleged misrepresentations, lack the 'particulars' required by Rule 9(b)."

At this point, the very most one can make of Saunders' allegations against Weber is that Weber made false statements merely to placate Saunders, i.e., to keep him from withdrawing funds, but not to induce him into investing initially or to make subsequent investments. And even that requires attributing vague allegations about false bookkeeping by "the funds" to Weber personally. Saunders alleges that Weber operated the fund into which Saunders' investment was placed, and claims that "the funds were losing money and hiding those losses through deliberately false reporting, false bookkeeping, and fraudulent concealment." (Doc. 1, Compl. ¶ 48.) But even if "the funds" means "Weber" (which is quite a stretch under the particularity requirements of Rule 9 and the PSLRA), there is no allegation that Saunders, once invested, relied on the false claims of profits and fraudulent bookkeeping to invest *more*. Therefore, even assuming that Weber made such misrepresentations to Saunders, they were not "in connection with the sale or purchase of securities" as required for § 10(b) liability. *Cf. S.E.C. v. George*, 426 F.3d 786, 793-94 (6th Cir. 2005) (holding that plaintiff sufficiently pled securities fraud with respect to a broker who had participated in a Ponzi scheme, and *encouraged others to participate in that scheme*).

These gaps in Saunders' Complaint are magnified by the facts in Weber's Motion for Relief, which assert that Weber did nothing more than conduct foreign currency trades in isolation from Morton's investors and whatever nefarious activity was afoot. At

this stage, this is sufficient to establish a meritorious defense to the securities fraud claim, as well as the other claims predicated on fraudulent activity that are required to satisfy Rule 9's heightened pleading standard. Although there are other claims in the Complaint, Weber need not establish defenses to all of them in order for the meritorious defense factor to weigh in his favor. *See*, *e.g.*, *S.E.C. v. Sierra Brokerage Servs., Inc.*, 2007 WL 1057384, at *10 (S.D. Ohio 2007) (unpublished) (finding it "unnecessary to determine whether meritorious defenses exist[] for the other claims" because the defendants "possesse[d] a meritorious defense to the claims predicated on fraudulent activity."). It is enough that, should Weber prevail on his defense to the fraud allegations, there is some possibility that the "outcome of the suit may be different than if the entry of default or the default judgment is allowed to stand." *In re Martin-Trigona*, 763 F.2d 503, 505 n.2 (2d Cir. 1985) (internal quotation marks omitted).

### iii.    Prejudice to Saunders

The final factor to consider is whether and to what extent vacating the default against Weber will unfairly prejudice Saunders. *Green*, 420 F.3d at 110. To establish prejudice, something more than the costs and delays inherent in prosecuting civil litigation is required. *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). Delay could result in unfair prejudice if, for example, it thwart's the plaintiff's recovery or remedy, results in the loss of evidence, creates increased difficulties of discovery, or provides greater opportunity for fraud and collusion. *Green*, 420 F.3d at 110.

Here, Saunders argues that further delay will thwart his recovery because the Securities and Exchange Commission has commenced concurrent litigation "against many of the same parties." (Doc. 59 at 4.) Saunders is concerned that if the SEC secures a judgment of its own, "any delay here prevents Plaintiff Saunders from protecting his judgment against these defendants from the SEC and other creditors." *Id*. But as Saunders concedes, the SEC has not named Daryl Weber as a defendant, and his concerns will be addressed if, as the Court recommends in a separate Report filed today (Doc. 63), final judgment is entered against all of the remaining Defendants besides Weber. Accordingly, Saunders asserts no unfair prejudice that would result from vacating the default against Weber, and this factor weighs in favor of granting Weber's Motion.

Considering these factors together under the more lenient Rule 55(c) standard, and in light of the disfavor with which this Circuit generally views default judgments, the Court finds that good cause exists to vacate both the default and default judgment against Weber. Although they are not to be applied as a strict mathematical formula, the Court notes that two of the three principal factors weigh in favor of Weber. In particular, the lack of specificity in Saunders' Complaint combined with Weber's factual claims cast doubt on Saunders' ability to establish liability either through dispositive motions or at trial. And assuming certified judgment against the other Defendants, Saunders does not claim any prejudice in proceeding with this suit other than the costs and delays that he could expect in any civil litigation.

Counting against Weber is his inexcusable delay in defending this suit, and Weber is now cautioned that any future dilatory conduct will result in severe sanctions, including judgment against him. But for the reasons stated above, the Court concludes that this factor is an insufficient basis, standing alone, on which to uphold the existing default judgment. Instead, considering Weber's possible meritorious defense and the lack of unfair prejudice to Saunders, combined with the understanding that "the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort," *Meehan*, 652 F.2d at 277, the Court should afford Weber one last opportunity to defend against Saunders' suit.

## Conclusion

For the foregoing reasons, Weber's Motion for Relief from Default Judgment (Doc. 56) should be GRANTED in part. The Court should vacate the default and default judgment entered against Weber, and reinstate Weber as a Party to this suit. Weber should be provided 14 days to file an Answer or Rule 12 motion, with the condition that Weber's default caused him to waive the defense of improper venue.

In a separate Report and Recommendation filed today (Doc. 63), the Court also recommends dismissing Defendant Joshua Weber from this suit, and entering final default judgment against the remaining Defendants Sean David Morton, Melissa Morton, 27 Investments LLC, Magic Eight Ball Distributing, Inc., Vajra Productions LLC, and Delphi Associates Investment Group. For the reasons stated in that Report, and in accordance with Rule 54(b), "there is no just reason [to] delay" entering that judgment,

even with Daryl Weber reinstated as a Defendant. *See Hogan v. Consolidated Rail Corp.*, 961 F.2d 1021, 1024-25 (2d Cir. 1992); Fed. R. Civ. P. 54(b).

Dated at Burlington, in the District of Vermont, this 28th day of June, 2010.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* Local Rules 72(a), 72(c), 73(e); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(d).