UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Tim Saunders,

        Plaintiff

        v.                   Civil Action No. 5:09-CV-125

Sean David Morton, Joshua Weber, Daryl
Weber, Melissa Morton, 27 Investments LLC,
Magic Eight Ball Distributing, Inc., Vajra
Productions LLC, Delphi Associates Investment
Group, Fraser Valley Trading,

        Defendants.

## REPORT AND RECOMMENDATION
(Docs. 67, 71)

      Plaintiff Tim Saunders, a citizen of Alaska, filed a complaint in this district against

several individual and corporate defendants on May 18, 2009, alleging violations of

federal securities laws, including Sections 10(b), 14(a), and 20(a) of the Securities

Exchange Act of 1934, *see* 15 U.S.C. §§ 78j(b), 78n(a), 78t, corresponding regulations,

*see* 17 C.F.R. § 240.10b-5, and Vermont state law.  (Doc. 1 ¶¶ 7, 19.)  Specifically,

Saunders seeks to recover funds he invested into what he claims was a fraudulent

investment scheme, devised and executed by the named defendants.  Presently before the

Court is Defendant Daryl Weber's Motion to Dismiss based upon claims of improper

venue, lack of subject matter jurisdiction, and failure to state a claim.  (Doc. 67.)  I

recommend that the Court GRANT in part and DENY in part Weber's Motion.

<u>**Background**</u>

**I.      The Defendants' Alleged Ponzi Scheme**

Defendant Sean David Morton operated a business called "Delphi Associates Investment Club," through which he solicited money from individuals, including Plaintiff Saunders.  Morton promised his clients that he would pool their funds and use the money to execute "trade[s] on the Foreign Exchange currency market" with the assistance of Defendant Daryl Weber.  (Doc. 72-4 at 2; Doc. 80 ¶ 14.)  Morton held himself out as an investment expert with a "spectacular, unparalleled and unsurpassed" record.  (Doc. 72-4 at 3; Doc. 80 ¶ 14.)  In a letter to investors, Morton claimed he had a history of earning exceptional profits from investments in various stocks, gold, and silver.  (*Id.*)  Morton also claimed that his "psychic abilities, Remote Viewing skills, and technical expertise" enabled him to "call[ ] ALL the highs and lows of the market, giving EXACT DATES for rises and crashes over the last 14 years."  (*Id.*)

Saunders invested funds with Delphi.  In his complaint, Saunders alleges that he never received any profits and that his money was never returned to him.  Saunders further alleges that Delphi was a "Ponzi scheme"[1] employed by the defendants to misappropriate investor funds for personal use and "to repay earlier investors, avert or

---

[1]  A Ponzi scheme is

> [a] fraudulent investment scheme in which money contributed by later investors generates artificially high dividends for the original investors, whose example attracts even larger investments.  Money from the new investors is used directly to repay or pay interest to earlier investors, usu[ally] without any operation or revenue-producing activity other than the continual raising of new funds.  This scheme takes its name from Charles Ponzi, who in the late 1920s was convicted for fraudulent schemes he conducted in Boston.

BLACK'S LAW DICTIONARY 1198 (8th ed. 2004).

settle pending lawsuits, cover up losses, [or] pay expenses." (Doc. 1 ¶¶ 1, 4, 6, 76.) Saunders contends that Morton, Weber, and the other named defendants induced him to invest by making materially false representations and that they created false financial statements reporting that Saunders' money was profitably invested in the foreign currency exchange market, when in fact the money was misappropriated and not invested at all. (Doc.1 ¶¶ 37-49.)

## II.   Defendants' Default and Weber's Reinstatement

All of the named defendants initially failed to plead or otherwise defend in response to Saunders's complaint. Morton, Daryl Weber, Delphi, Fraser Valley Trading, Melissa Morton, 27 Investments LLC, Magic Eight Ball Distributing, Inc., and Vajra Productions LLC were found to be in default, and this Court issued default judgments pursuant to Federal Rule of Civil Procedure 55 on August 21, 2009. (Docs. 14, 15, 63, 66.) Saunders moved to dismiss his claims against Joshua Weber, and the Court granted his motion. (Doc. 66.) Eight months after the default judgment, Daryl Weber filed a *pro se* Motion for Relief from Final Judgment. (Doc. 56.) The Court granted Weber's motion, vacating the default under Federal Rule of Civil Procedure 60, and reinstating Weber as a defendant. (Docs. 63, 64, 66, 67.)

## III.   Subsequent Pleadings

In reinstating Weber as a party, the Court granted him leave to file an answer or other responsive pleading. (Docs. 63, 64, 66, 67.) On September 7, 2010, Weber filed a *pro se* pleading, entitled "Rule 12 Defenses and Objections." (Doc. 67.) Weber's omnibus pleading included a Motion for a More Definite Statement, *see* Fed. R. Civ. P.

3

12(e) and a Motion to Dismiss based upon claims of improper venue, lack of subject matter jurisdiction, and a failure to state a claim, *see* Fed. R. Civ. P. 12(b).  The Court granted Weber's Motion for a More Definite Statement, concluding that Saunders's complaint failed to provide Weber with reasonable detail concerning the nature of Weber's particular involvement in the alleged fraud.  As a result, the Court concluded, Weber did not yet have fair notice of the claims asserted so as to enable him to answer and prepare for trial.  (Doc. 74.)  The Court ordered Saunders to amend his complaint and

> state with particularity the circumstances constituting his state law fraud and conspiracy claims against Weber and the circumstances constituting violations of the Securities Exchange Act of 1934.  The amended complaint must fulfill the pleading requirements of Rule 9(b) and the [Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)] and state the elements of the applicable substantive law.

(Doc. 74 at 9.)  In the same Order, the Court deferred ruling upon Weber's remaining motions until Saunders filed his amended complaint.  (*Id.*)

Saunders filed a pleading entitled "Plaintiff's More Definite Statement" on January 12, 2011, seeking to incorporate his original complaint and setting forth more specific allegations against Weber.  (Docs. 80, 81.)  The Court granted Saunders's request to incorporate his original complaint.  (Doc. 82.)

With the complaint amended, Saunders alleges that Weber, a Vermont resident, "devised and carried out" a fraud upon Saunders utilizing investment contracts.  (Doc. 80 ¶¶ 1-5.)  Specifically, Saunders alleges that his "deposit of $130,000 with the . . .

Defendants"[2] was "transferred directly to . . . Weber" never invested as promised, and never returned to Saunders. (Doc. 80 ¶¶ 11-14.) Saunders contends that Weber made false statements to induce Saunders to invest funds and that Weber knew the statements were false. (Doc. 80 ¶¶ 15-18.) According to Saunders's complaint, Weber's actions and knowledge of Morton's actions constitute "securities fraud, conversion, and . . . impermissible comingling." (Doc. 80 ¶ 18.)

Saunders incorporates into his complaint an exhibit which appears to be a complaint filed by the Securities and Exchange Commission ("SEC") against Morton and his associated entities. (Doc. 71-1; Doc. 80 ¶¶ 8-10, 20-21, 33); *see SEC v. Sean David Morton, Vajra Productions LLC, 27 Investments LLC, Magic Eight Ball Distributing, Inc., Melissa Morton, and Prophecy Institute*, 10 CIV 1720 (LAK/MHD) (S.D.N.Y.). The SEC complaint mentions neither Saunders nor Weber, but it does describe the nature of Morton's alleged Ponzi scheme and raises several of the same claims Saunders brings against Weber. (Doc. 71-1.)

The Court must now consider Weber's remaining Motion.[3] For the reasons set forth below, I recommend that the Court DENY Weber's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Lack of Venue. (Doc. 67 ¶¶ 6-9.) I further recommend that the Court DENY Weber's Motion to Dismiss for Failure to State a Claim with

---

[2] Saunders's original complaint alleged that the amount he was induced to invest was $135,000. (Doc. 1 ¶ 5.) He does not state any reason why the amount has been reduced to $130,000. The Court hereinafter refers to the amount invested as $130,000, consistent with Saunders's more recent pleading. (Doc. 80.)

[3] Weber's filing of a Motion to Dismiss stays the requirement that he file an answer to Saunders's complaint until 14 days after the Court issues a ruling on Weber's Motion. *See* Fed. R. Civ. P. 12(a)(4)(A).

respect to the following claims: (1) alleged violations of Section 10(b) of the Securities

Exchange Act of 1934 and corresponding regulations ("Rule 10b-5"); (2) common law

fraud; (3) conversion; (4) civil conspiracy; (5) breach of contract; (6) unjust enrichment;

(7) breach of fiduciary duty; and (8) rescission and accounting.  Finally, I recommend

that the Court GRANT Weber's Motion to Dismiss for Failure to State a Claim with

respect to the following claims:  (1) alleged violations of Sections 14(a) and 20(a) of the

Securities Exchange Act of 1934 and (2) respondeat superior and vicarious liability.

<u>Discussion</u>

Weber argues that Saunders's claims against him should be dismissed for lack of

subject matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), improper venue, *see* Fed. R. Civ.

P. 12(b)(3), and for failure to state a claim upon which relief can be granted, *see* Fed. R.

Civ. P. 12(b)(6).  (Doc. 67.)

**I.      Motion to Dismiss for Lack of Subject Matter Jurisdiction**

As noted above, in a Report and Recommendation adopted by the Court, the Court

reinstated Weber as a party to this proceeding following a default judgment against him.

(Docs. 64, 66.)  That Report and Recommendation ("R&R") concluded that the Court

retains subject matter jurisdiction over Saunders's federal securities claims because they

constitute a "civil action arising under the . . . laws . . . of the United States."  28 U.S.C. §

1331; (Doc. 64 at 8).  The R&R further concluded that the Court retains subject matter

jurisdiction over Saunders's state law claims pursuant to 28 U.S.C. § 1367(a), which

provides that "the district court shall have supplemental jurisdiction over all other claims

6

that are so related to [the federal] claims in the action . . . that they form part of the same case or controversy."

Weber now argues that the Court lacks subject matter jurisdiction because the type of trading he allegedly engaged in with Saunders's funds "is not subject to regulation by" federal law under the Securities Exchange Act of 1934 (the "Act").  (Doc. 67 ¶ 9); *see* Fed. R. Civ. P. 12(b)(1).  "Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper when the district court lacks the statutory of constitutional power to adjudicate it."  *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (quotation omitted).  In considering a motion to dismiss, the Court construes the complaint liberally, accepting all factual allegations as true and drawing all reasonable inferences in the plaintiff's favor.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *In re Tower Automotive Sec. Litig.*, 483 F. Supp. 2d 327, 334 (S.D.N.Y. 2007).  "[T]he party invoking the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists . . . ."  *Economic Enterprises, Inc. v. T.D. Bank N.A.*, No. 3:10-cv-157 (VLB), 2011 WL 446891, at *2 (D. Conn. Feb. 3, 2011).  "A district court may consider evidence outside the pleadings in resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)."  *Parks v. Fairfax Financial Holding Ltd.*, No. 06-CV-2820(GBD), 2010 WL 1372537, at * 2 (S.D.N.Y. Mar. 29, 2010).

Here, Saunders contends that, in committing the alleged fraud, Weber utilized "investment contracts."  (Doc. 80 ¶ 4.)  Investment contracts are subject to regulation under the Securities Exchange Act of 1934.  *See* 15 U.S.C. § 78c(a)(10).  An "investment contract" is "a contract, transaction or scheme whereby a person invests his money in a

common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise." *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946).

Saunders's complaint refers to and quotes from an exhibit attached to his Response to Weber's Motion.  The exhibit is a letter from Morton to investors, stating "This is a BUSINESS DEAL with you as one partner and [Weber] and I as the other." (Doc. 80 at 2; *see* Doc. 71-2 at 4.)  The letter then details what Weber and Morton proposed to do with investors' funds and how investors should request to receive the profits that would be generated from their investments.  (*Id.*)  Drawing all reasonable inferences in Saunders's favor, the exhibit sufficiently supports the allegation in the complaint that Weber's alleged fraud utilized investment contracts.  Accordingly, Saunders's claim is "a civil action arising under the . . . laws . . . of the United States," 28 U.S.C. § 1331, and the Court properly retains subject matter jurisdiction at this time.  In addition, as the Court concluded in adopting the R&R, the Court continues to retain subject matter jurisdiction over Saunders's state law claims pursuant to 28 U.S.C. § 1367(a).

## II.    Motion to Dismiss for Lack of Venue

As noted above, Weber initially failed to plead or otherwise defend in response to Saunders's complaint, and this Court issued a default judgment against him pursuant to Federal Rule of Civil Procedure 55 on August 21, 2009.  (Docs. 14, 15, 63, 66.)  Eight months after the default judgment, Weber filed a *pro se* Motion for Relief from Final

Judgment.  (Doc. 56.)  The Court granted Weber's Motion, vacating the default under

Federal Rule of Civil Procedure 60, and reinstating Weber as a defendant.  (Docs. 63, 64,

66, 67.)

In the R&R recommending that the Court reinstate Weber as a party, the

undersigned reasoned:  "Weber is not free of fault for his failure to appear, and he should

be reinstated to this suit on the condition that he has waived the defense of improper

venue by failing to timely raise the issue in response to Saunders' Complaint."  (Doc. 64

at 11); *see* 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

PROCEDURE § 2700 (3d ed. 1998) ("The court's inherent power and use of discretion . . .

enables it to set aside default entries on various conditions.").  The undersigned

concluded that "Weber should be provided 14 days to file an Answer or Rule 12 motion,

with the condition that Weber's default caused him to waive the defense of improper

venue."  (Doc. 64 at 23.)  In adopting the R&R, the Court adopted the condition that

Weber has waived the defense of improper venue.  Weber does not set forth any reason

why the Court should reconsider its earlier ruling.  Thus, the Court need not further

consider the claim that venue is improper.

In any event, Section 27 of the Act permits claims to be brought "in a district

where (1) any act or transaction constituting the violation occurred, or where the

defendant is (2) found, or (3) an inhabitant, or (4) transacts business."  *Diversified

Hospitality Group, Inc. v. Carson Pirie Scott & Co.*, No. 90-CIV-2957 (WK), 1991 WL

35953, at *5 (S.D.N.Y. Mar. 8, 1991); 15 U.S.C. § 78aa.  There is no dispute that Weber

can be found in Vermont.  Accordingly, Weber's claim that venue is improper is without merit.

### III.   Motion to Dismiss for Failure to State a Claim

#### A.   Pleading Standards

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted."  A properly pleaded complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Iqbal*, 129 S. Ct. at 1949.

In considering a motion to dismiss, the Court construes the complaint liberally, accepting all factual allegations as true and drawing all reasonable inferences in the plaintiff's favor.  *In re Tower Automotive Sec. Litig.*, 483 F. Supp. 2d at 334.  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (quotation omitted).  "Factual allegations must be enough to rise above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face."  *Taddeo v. Meridian Private Residences Homeowners Assoc.*, No. 2:08-CV-01463-KJD-RJJ, 2010 WL 3896129, at *3 (D. Nev. Sept. 30, 2010) (quotation omitted).  "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6)

motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004 & Supp. 2007)); *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) ("Consideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion."); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 901, 808-09 (2d Cir. 1996) (permissible to consider full text of documents partially quoted in complaint).

Because Saunders's complaint involves allegations sounding in fraud, his complaint must also comply with pleading requirements under Federal Rule of Civil Procedure 9(b). When a complaint alleges fraud, "Rule 9(b) requires that allegations of fraud be pleaded with particularity." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). This means that the complaint must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent; (2) identify the speaker; (3) state where and when the statements (or omissions) were made; and (4) explain why the statements (or omissions) are fraudulent. *Segui*, 91 F.3d at 347.

"Rule 8's general pleading requirement and Rule 9(b)'s particularity requirement must be read together." *In re Towers Automotive Sec. Litig.*, 483 F. Supp. 2d at 335. Rule 8 and Rule 9(b) have been read together to mean that "the pleading of detailed

11

evidentiary matter[s] in securities litigation" is not required. *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d. Cir. 2001).

Saunders's claims arising under the Act are also subject to the pleading standards established by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b).  The PSLRA requires that a complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1)(B).  *See also Tellabs, Inc.*, 551 U.S. at 322-25 (setting forth pleading standards applicable to the element of scienter under the PSLRA).

## B.    Analysis

### 1.    Securities Fraud

#### a.    Section 10(b) and Rule 10b-5

Count I of Saunders's complaint includes alleged violations of Section 10(b) of the Act, *see* 15 U.S.C. § 78j(b), and Rule 10b-5, *see* 17 C.F.R. § 240.10b-5(b).  (Doc. 1 ¶¶ 55-60; Doc. 80 ¶¶ 4, 13-18, 23.)  Section 10(b) of the Act makes it unlawful to "use or employ, in connection with the . . . sale of any security . . . any manipulative or deceptive device or contrivance."  15 U.S.C. § 78j(b).  Pursuant to Section 10(b), the SEC promulgated Rule 10b-5, which makes it unlawful "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."  17 C.F.R. § 240.10b-5(b).

The basic elements of a cause of action for securities fraud under Section 10(b) and Rule 10b-5 are:  (1) a material misstatement or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) "loss causation, i.e., a causal connection between the material misrepresentation and the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (emphasis omitted).  To meet the pleading standards under the PSLRA, the relevant inquiry is whether "all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc.*, 551 U.S. at 322-23.

Saunders's Complaint, as amended, complies with the pleading standards set forth in Rule 8, Rule 9(b), and the PSLRA and contains sufficient factual matter to state a claim to relief that is plausible on its face.  (Docs. 1, 80.)  Saunders should be entitled to offer evidence in support of his claims.  Saunders contends the money he gave to Morton for purported investment was transferred to Weber.  The money was allegedly never used to invest, but was instead misappropriated for Weber's personal use and the perpetuation of a Ponzi scheme.  (Doc. 1 ¶ 3-5, 17.)  Saunders further contends that his funds were comingled with other funds and transferred to other individuals, and that Weber's misuse of Saunders's funds was willful, deliberate, and malicious.  (Doc. 1 ¶¶ 40-41.)  As a result of Weber's conduct, Saunders contends that he lost $130,000.  (Doc. 80 ¶ 11.)  In support of these allegations, Saunders points to email communications between Morton and another individual, which provides that

> Occasionally we had people coming and going in the accounts,
> taking profits or cashing out.  On a few occasions, . . . [we] would make
> pay outs from the funds we had on hand and credit those funds to others . . .
> so people could get paid right away if they needed it.

(Doc. 67-2 at 1-2; Doc. 80 ¶¶ 22-25.)

Saunders further alleges that he relied on misstatements made by Weber between

February 2007 and June 1, 2007 regarding the use of his funds, such as representations

that "the traders have been making several thousands a day," and "[Weber] . . . ha[s]

made 71 trades with only 4 losses," thereby inducing Saunders to refrain from

withdrawing his investments.  (Doc. 1 ¶¶ 29-39, 42; Doc. 80 ¶ 14.)  Another exhibit

Saunders submits in support of his complaint is a letter to investors from Morton.  The

letter states that Weber "has the technical wizardry to make the trades" and that he would

be trading investor funds "from LATE SUNDAY NIGHT THROUGH THURSDAY."

(Doc. 71-2 ¶¶ 2-3; Doc. 80 ¶ 14.)

The Second Circuit has acknowledged that mere "expressions of puffery and

corporate optimism do not give rise to securities violations."  *Rombach v. Chang*, 355

F.3d 164, 174 (2d Cir. 2004).  The alleged misstatements in this case, however, are

"potentially capable of measurement and verification" and thus "not dismissible as

puffery."  *In re Towers Automotive Sec. Litig.*, 483 F. Supp. 2d at 337.  Thus, I

recommend that the Court DENY Weber's Motion to Dismiss Saunders's claim that he

violated Section 10(b) and Rule 10b-5.

### b.  Section 14(a)

Saunders's complaint also includes allegations that Weber violated Section 14(a) of the Act.  *See* 15 U.S.C. § 78n(a); (Doc. 1 ¶ 19).  Section 14(a) "makes it unlawful to solicit proxies with respect to securities registered under § 12 . . . of such Act in violation of regulations issued by the Securities and Exchange Commission."  Andrew M. Campbell, Annotation, *Standard of Liability in Private Actions under § 14(a) of the Securities Exchange Act of 1934 (15 U.S.C.A. § 78n(a)) and SEC Rules Thereunder*, 125 A.L.R. Fed. 377 (1995).  Saunders does not allege that Weber solicited proxies[4] or that the allegedly fraudulent scheme involved securities registered under Section 12.  Thus, Saunders's complaint sets forth no facts relevant to such an allegation, and I recommend that the Court GRANT Weber's Motion to Dismiss Saunders's claim that he violated Section 14(a).

### c.  Section 20(a)

Saunders's complaint further alleges that Weber violated Section 20(a) of the Act.  (Doc. 1 ¶ 19.)  Section 20(a) pertains to the liability of controlling persons, and provides that

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

---

[4] Proxy solicitation is "[a] request that a corporate shareholder authorize another person to cast the shareholder's vote at a corporate meeting."  BLACK'S LAW DICTIONARY 1263 (8th ed. 2004).

15 U.S.C. § 78t(a).  "In order to establish a prima facie case of controlling-person

liability, a plaintiff must show a primary violation by the controlled person and control of

the primary violator by the targeted defendant . . . and show that the controlling person

was in some meaningful sense a culpable participant in the fraud perpetuated by the

controlled person."  *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1472 (2d Cir.

1996) (quotation, citations, and brackets omitted).  Saunders does not allege that Weber

directly or indirectly controlled any person.[5]  Thus, Saunders's Complaint sets forth no

facts relevant to such an allegation, and I recommend that the Court GRANT Weber's

Motion to Dismiss Saunders's claim that he violated Section 20(a).

### d.   Saunders's Incorporation of SEC Complaint Allegations against Morton

In Saunders's Response (Doc. 71) to Weber's Motion and in Saunders's

complaint, he quotes at length from a complaint filed by the SEC against Morton and his

associated entities and seeks to incorporate that complaint into his own.  (Doc. 80 ¶¶ 8-

10, 20-21, 33); *see SEC v. Sean David Morton, Vajra Productions LLC, 27 Investments

LLC, Magic Eight Ball Distributing, Inc., Melissa Morton, and Prophecy Institute*, 10

CIV 1720 (S.D.N.Y.).  The SEC complaint mentions neither Saunders nor Weber.

References to and incorporation of that complaint are not particularly relevant to

Saunders's claims.  The facts and allegations set forth in that pleading do not save

Saunders's Section 14(a) and 20(a) claims.  The SEC complaint does not refer to

---

[5] Saunders alleged in his original complaint that Joshua Weber, Defendant Weber's son, was "an employee and/or agent of" Weber.  (Doc. 1 ¶ 16.)  Saunders, however, subsequently moved to dismiss Joshua Weber as a defendant, and the Court granted his Motion.  (Docs. 58, 63, 66.)

solicitation of proxies or state that the allegedly fraudulent scheme involved securities registered under Section 12.  Further, the SEC complaint does not set forth facts supporting an allegation that Weber directly or indirectly controlled any person.

### 2.    Common Law Fraud

Saunders's complaint next alleges that Weber's involvement in the Ponzi scheme constitutes common law fraud.  Under Vermont law, a plaintiff must demonstrate by clear and convincing evidence each of the following essential elements in order to prove fraud.  First, a plaintiff must prove that the defendant "misrepresented an existing fact which affected the essence of the transaction with plaintiffs or knowingly allowed another to make such a representation on defendants' behalf."  *Follo v. Florindo*, 185 Vt. 390, 404 (2009) (quotation omitted).  Second, a plaintiff must prove that the defendant "did so intentionally;" and third, "that the misrepresentation was false when made and known at the time to be false by a defendant, or that the representation was recklessly made as being within the defendants' own knowledge without defendant in fact knowing whether it was true or not."  *Id.* at 404-05.

Accepting Saunders's averments as true and drawing all reasonable inferences in his favor, Saunders's complaint states a claim for common law fraud.  Saunders contends that Weber "made, or caused to be made . . . misrepresentations, . . . knowing the . . . representations . . . were false and misleading at the time made."  (Doc. 1 ¶ 62; Doc. 80 ¶¶ 13-18.)  The alleged misrepresentations include a promise that, Morton, with the assistance of Weber would pool client funds and use the money to execute "trade[s] on the Foreign Exchange currency market."  (Doc. 72-4 at 2; Doc. 80 ¶ 14.)  Other alleged

misrepresentations include a statement that "the traders have been making several thousands a day," and "[Weber] . . . ha[s] made 71 trades with only 4 losses."  (Doc. 1 ¶¶ 29-39, 42; Doc. 80 ¶ 14.)  Finally, Saunders alleges that Weber knew that Morton was misrepresenting that Weber "has the technical wizardry to make the trades" and that Weber would be trading investor funds "from LATE SUNDAY NIGHT THROUGH THURSDAY."  (Doc. 71-2 ¶¶ 2-3; Doc. 80 ¶ 14.)  Saunders alleges that these misrepresentations were made intentionally, "in order to dupe [Saunders] into giving money to Defendants for investing" but that the money was never invested as promised. (Doc. 1 ¶ 62; Doc. 80 ¶¶ 13-18.)

Saunders's complaint sets forth allegations consistent with the elements of common law fraud and satisfies the heightened pleading requirements under Rule 9(b). The complaint states with particularity that the circumstances constituting fraud are the alleged Ponzi scheme as Saunders describes.  The complaint further details precise allegedly fraudulent statements, identifies the speaker and context, and explains why the statements are fraudulent.  *See Segui*, 91 F.3d at 347.  Accordingly, I recommend that the Court DENY Weber's Motion to Dismiss Saunders's common law fraud claim.

### 3.   Conversion

Next, Saunders alleges that Weber engaged in "fraudulent conversion" of his money.  (Doc. 1 ¶¶ 3, 4, 52, 53, 80-85; Doc. 80 ¶¶ 13, 18.)  A claim for conversion is subject to the requirement that Saunders set forth "a short and plain statement of the claim showing that [he] is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To establish a claim for conversion, the owner of property must show that "another has appropriated the

property to that party's own use and beneficial enjoyment, has exercised dominion over it in exclusion and defiance of the owner's right, or has withheld possession from the owner under a claim of title inconsistent with the owner's title." *P.F. Jurgs & Co. v. O'Brien*, 160 Vt. 294, 299 (1993).  "Conversion may also be committed by retention of the property after the owner's rightful demand."  *Id.*; *see also O'Bryan Constr. Co. v. Boise Cascade Corp.*, 139 Vt. 81, 88 (1980) (use of property in manner beyond scope of consent conferred may form basis of a conversion).

Saunders's complaint alleges that he gave $130,000 to Delphi for the purposes of investment.  (Doc. 80 ¶ 11.)  Saunders contends that the money was not invested but instead appropriated by Weber for his own use and beneficial enjoyment.  (Doc. 1 ¶¶ 3, 4; Doc. 80 ¶¶ 13, 18.)  Finally, according to Saunders's complaint, he asked for his money to be returned, but Defendants ceased all communication with him.  (Doc. 1 ¶¶ 52-54.) These allegations adequately set forth a claim corresponding to the elements of conversion.  Accordingly, I recommend that the Court DENY Weber's Motion to Dismiss Saunders's claim of conversion.

### 4.    Civil Conspiracy

Next, Saunders alleges that Weber's involvement constitutes civil conspiracy.  For this common law claim, Saunders need only comply with the pleading requirements under Rule 8(a)(2), set forth above.

It is not entirely clear under Vermont law whether the tort of civil conspiracy constitutes an independent cause of action.  In *Davis v. Vile*, an unpublished order issued by a three-justice panel, the Vermont Supreme Court ruled that the plaintiff, a logger, had

failed to plead the elements required to support his action for civil conspiracy against the

Vermont Agency of Natural Resources. *Davis v. Vile*, No. 2002-465, 2003 WL

25746021, at *3 (Vt. 2003). In so ruling, the Vermont Supreme Court reasoned:

> Assuming that there continues to be an independent cause of action
> for the tort of civil conspiracy, *but see Chambers v. Stern*, 64 S.W. 3d 737,
> 743 (Ark. 2002) (civil conspiracy is not actionable in and of itself, but
> merely allows recovery for damages caused by acts committed pursuant to
> conspiracy); *Burns Jackson Miller Summit & Spitzer v. Lindner*, 452
> N.Y.S. 2d 80, 93-94 (App. Div. 1982) (allegation of civil conspiracy is not
> independent tort but can be used to connect non-actors with co-
> conspirators); *Henry v. Deen*, 310 S.E. 2d 326, 334 (N.C. 1984) (civil
> conspiracy does no more than associate defendants together and allow
> greater flexibility in applying evidentiary rules); *Hart v. Moore*, 952 S.W.
> 2d 90, 98 (Tex. Ct. App. 1997) (civil conspiracy provides basis for
> imposing damages, but is not cause of action complete within itself),
> plaintiff has failed to allege facts that satisfy all of the elements of the tort
> as set forth in *Boutwell v. Marr*, 71 Vt. 1, 42 A. 607 (1899), the only case
> that plaintiff relies upon.

This reasoning suggests that some doubt exists as to whether the tort of civil conspiracy

continues to be an independent cause of action in Vermont. *See also* 16 Am. Jur. 2d

Conspiracy § 50 ("It has been said that there is no such thing as a civil action for

conspiracy; the action is one for damages arising out of the acts committed pursuant to

the conspiracy.").

Nonetheless, this Court has issued decisions upon parties' claims of civil

conspiracy in which it has been assumed that the claim constitutes an independent cause

of action in Vermont. *See Ackerley v. North Country Stone, Inc.*, 620 F. Supp. 2d 591,

600 (D. Vt. 2009); *Rouleau v. Ocwen Federal Sav. Bank FSB*, No. Civ. 1:06-CV-15,

2006 WL 1129392 (D. Vt. Apr. 25, 2006); *Vermont Castings, Inc. v. Evans Products Co.*,

510 F. Supp. 940, 944 (D. Vt. 1981). Thus, there is authority to support either approach

in this case.  In any event, the outcome would be the same, because, under either approach, Saunders's action for damages against Weber arising out of acts committed pursuant to the alleged conspiracy should be permitted to go forward.

Vermont law defines conspiracy as a "combination of two or more persons to effect an illegal purpose, either by legal or illegal means, or to effect a legal purpose by illegal means."  *Hooker, Corser & Mitchell Co. v. Hooker*, 89 Vt. 383, 390 (1915) (quotation and ellipsis omitted).  For a civil action, the plaintiff must be damaged by something "done in furtherance of the agreement," and "the thing done [must] be something unlawful in itself . . . . [T]here can be no recovery unless illegal means were employed."  *Boutwell*, 42 A. at 609.

Saunders's complaint sets forth sufficient allegations to state a claim for civil conspiracy.  The complaint alleges that Weber was Morton's partner, and that they acted together and in agreement to create an illegal Ponzi scheme for the purposes of defrauding Saunders.  (Doc. 80 ¶¶ 5, 14, 20, 24, 30.)  The complaint also alleges that Morton gave Weber control of Saunders's funds and that Weber did not invest the funds as promised but rather used them for his own personal benefit.  (Doc. 80 ¶¶ 13, 14, 35, 37.)

In the alternative, the Court could proceed upon the basis that civil conspiracy is not a separate claim, consistent with the law of other jurisdictions as cited in *Vile*, 2003 WL 25746021, at *3.  Under this line of reasoning, the "claim" would not be a separate claim subject to Weber's Motion to Dismiss.  Rather, it would serve as a theory of

21

liability for Saunders's substantive allegations.  Under either approach, I recommend that the Court DENY Weber's Motion to Dismiss Saunders's allegation of civil conspiracy.

### 5.    Breach of Contract

Saunders also contends that Weber is liable to him for breach of contract. Saunders's complaint alleges that an agreement existed between Delphi and himself to invest his funds and that the agreement was breached when Weber failed to invest the funds as promised.  (Doc. 1 ¶¶ 86-90.)  These allegations are all that is needed to state a claim for breach of contract and dismissal under Rule 12(b)(6) is therefore inappropriate. *Carthaginian Financial Corp. v. Skinner, Inc.*, No. 2:05-CV-3, 2005 WL 1388689, at *2 (D. Vt. June 3, 2005).  The meaning of contract terms and the question of whether a party's behavior breached those terms is more appropriate at the summary judgment stage.  *Id.*  Thus, I recommend that the Court DENY Weber's Motion to Dismiss Saunders's breach of contract claim.

### 6.    Unjust Enrichment

Saunders also contends that he is entitled to recover the full amount of his investment on the theory of unjust enrichment.  (Doc. 1 ¶¶ 91-95.)  "Under the doctrine of unjust enrichment, a party who receives a benefit must return the payment if retention would be inequitable."  *Gallipo v. City of Rutland*, 178 Vt. 244, 263 (2005).  To the extent that recovery based on the theory of unjust enrichment constitutes a separate claim, *see Ackerley*, 620 F. Supp. 2d at 602, Saunders's complaint sets forth sufficient allegations to state a claim.  Saunders contends that Weber received a benefit from the funds Saunders invested by employing the funds for his personal use, and that for Weber

22

to retain that benefit would be inequitable.  (Doc. 1 ¶¶ 91-95; Doc. 80 ¶ 39.)

Accordingly, I recommend that the Court DENY Weber's Motion to Dismiss Saunders's

claim of unjust enrichment.

### 7.        Breach of Fiduciary Duty

Saunders further alleges that Weber is liable to him for breach of fiduciary duty

and for aiding and abetting the other named defendants in breaching fiduciary duty.

(Doc. 1 ¶¶ 96-118.)  "A fiduciary relation exists between two persons when one of them

is under a duty to act for or to give advice for the benefit of another upon matters within

the scope of the relation."  *Cooper v. Cooper*, 173 Vt. 1, 4 (2001) (quoting Restatement

(Second) of Torts § 874 cmt. a (1979)).  Saunders's complaint alleges that Weber was

under a duty to employ invested funds for Saunders's benefit but instead used the funds

for his own benefit.  Saunders also claims that Weber knew that Saunders depended on

his "guidance, knowledge, and expertise."  (Doc. 1 ¶ 100.)  These allegations are

sufficient to set forth a claim that a fiduciary relationship existed and that it was

breached.

> Under the theory of aider and abettor liability,
>
> [a] person is subject to liability for harm resulting to a third person from the
> tortious conduct of another if the person: (1) commits a tortious act as part
> of a common design with the other; (2) gives substantial assistance to the
> other knowing that the other's conduct is a breach of duty; or (3) gives
> substantial assistance to the other to accomplish a tortious result while also
> acting in a manner that is a breach of duty to the third person.

*Lussier v. Bessette*, No. 2010-056, 2010 WL 4674369, at ¶ 7 (Vt. Nov. 19, 2010) (citing

Restatement (Second) of Torts § 876 (1979)).  Saunders's complaint alleges throughout

23

that Weber knew of the alleged fraud and worked closely with Morton as his partner to help him carry it out.  These allegations are sufficient to set forth a claim for aider and abettor liability.  Accordingly, I recommend that the Court DENY Weber's Motion to Dismiss these claims.

### 8.     Respondeat Superior and Vicarious Liability

Next, Saunders claims that Weber is liable for damages under the theory of respondeat superior.  (Doc. 1 ¶¶ 119-23.)  "Under the settled doctrine of respondeat superior, an employer or master is held vicariously liable for the tortious acts of an employee or servant committed during, or incidental to, the scope of employment." *Brueckner v. Norwich Univ.*, 169 Vt. 118, 122-23 (1999).

Saunders alleges that Morton and Weber were "partners," but nowhere in his complaint does he allege, in the alternative, that any employee, servant, or agent of Weber committed any tortious act for which Weber should be held vicariously liable. Indeed, Saunders's complaint appears to implicitly acknowledge that he no longer states a claim under this theory of liability now that Weber is the only remaining party.  (Doc. 80 ¶ 44.)  The complaint and attached exhibits add greater specificity to some of Saunders's fraud-related claims, but in the final paragraph, Saunders states that his claims of civil conspiracy, breach of contract, unjust enrichment, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty satisfy Rule 8(a)(2)'s "short and plain statement" requirement.  (*Id.*)  Saunders does not mention the claim arising under the doctrine of respondeat superior that he asserted in his original complaint.  I therefore recommend that the Court conclude that Saunders's complaint fails to state a claim that

24

entitles him to relief upon this theory of liability and that the Court accordingly GRANT

Weber's Motion to dismiss this claim.

### 9.    Request for Accounting and Request for Rescission

Finally, Saunders's complaint requests that the "Defendants should be ordered to

provide [Saunders] with an accounting of all funds disbursed from August 2006 through

to the present."  (Doc. 1 ¶ 129.)  The complaint also requests "[b]y way of alternative

relief, . . . rescission of all investments made with any part of [Saunders's funds] and

restitution, as the Court deems appropriate."  (Doc. 1 ¶¶ 131-32.)

Under Vermont law, "[i]t is well established that a party induced into a contract by

fraud or misrepresentation can rescind the contract and avoid liability for any breach

thereon."  *Sarvis v. Vermont State Colleges*, 172 Vt. 76, 80 (2001); *see Negyessy v.

Strong*, 136 Vt. 193, 194 (1978) (Where a party was induced to enter into a contract by

fraud or misrepresentation, "the deceived party may seek the remedy of being excused

from the contract through rescission, or seeking the damages occasioned by the fraud.").

As noted above, the undersigned recommends that the Court permit several of Saunders's

claims from which this remedial request arises to go forward.  It follows that for

substantially the same reasons stated above, the undersigned concludes that Saunders

should be permitted to present evidence in support of his claim for rescission.

With respect to Saunders's request for an accounting, there is little contemporary

law in Vermont to establish what elements a plaintiff must plead to state a claim for an

accounting.  A statutory right to an accounting does exist, however, *see* 12 V.S.A. §

4251, and neither the statute nor case law appears to require that a plaintiff set forth

25

anything beyond the grounds upon which he believes he is entitled to an accounting. *Joy v. Walker*, 29 Vt. 257 (1857) ("[W]e do not esteem it necessary that the declaration should specify all the items for which the defendant is called to account, or indeed the subject matter of each item, but only the transaction out of which the account is claimed."); *Ganaway v. Miller*, 15 Vt. 152 (1843) (An action for an accounting "should set forth, distinctly, all the grounds on which the plaintiff claims to hold the defendant to an accounting."); *James M. Chadwick & Co. v. Divol*, 12 Vt. 499 (1837) (plaintiff does not always bear the burden of proving that he demanded an accounting from the defendant and was refused); *Moore v. Wilson*, 2 D. Chip. 91 (Vt. 1824) (holding that it is unnecessary for the plaintiff to state in his declaration from whose hands the defendant received the money for which he is called upon to account). *Cf. Dayan Enters., Corp. v. Nautica Apparel, Inc.*, No. 03-Civ-5706(ILS), 2003 WL 22832706, at *1 (S.D.N.Y. Nov. 26, 2003) (stating that under New York law, to sustain an action for an accounting, a plaintiff must establish "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." (quotation omitted)).

As noted above, the undersigned recommends Saunders be permitted to present evidence in support of several of his other claims. These other claims provide the grounds upon which Saunders believes he is entitled to an accounting. Accordingly, the undersigned concludes that Saunders should also be permitted to present evidence in support of his claim for an accounting.

## Conclusion

I recommend that the Court GRANT in part and DENY in part Weber's Motion to Dismiss for Failure to State a Claim.  (Doc. 67.)  I recommend that the Court DENY Weber's Motions to Dismiss for Lack of Subject Matter Jurisdiction and Improper Venue.  (Doc. 67.)  Should the Court adopt this recommendation, I further recommend that the Court ORDER Weber to file an Answer and remind the parties to take notice of and to comply with their disclosure and discovery obligations under Federal Rule of Civil Procedure 26 and Local Rule 26, including the filing of a stipulated discovery schedule.

Dated at Burlington, in the District of Vermont, this 17th day of February, 2011.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c).  Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation.  *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).